## KEVIN T. COADY vs. WELLFLEET MARINE CORPORATION & others.[1]

No. 02-P-1273.

Worcester. February 3, 2004. - October 12, 2004.

Present: GREENBERG, GRASSO, & KAFKER, JJ.

*Practice, Civil,* Instructions to jury, Damages, Attorney's fees, Interest. *Rules of Civil Procedure. Contract,* Performance and breach, Damages, Misrepresentation. *Damages,* Attorney's fees, Future damages, Interest. *Evidence,* Credibility of witness. *Witness,* Credibility. *Frauds, Statute of.*

The plaintiff in a civil action properly preserved his right to appeal the exclusion of a requested jury instruction by objecting to the judge's refusal to instruct as soon as the instructions were given, thus satisfying the requirements of Mass. R. Civ. P. 51(b), 365 Mass. 816 (1974). [240-241]

A Superior Court judge properly declined the plaintiff's request for a jury instruction providing that a party's breach of a contract precludes that party from recovering under the contract for the other party's breach, because a party's obligation to pay for services received prior to the other party's breach is not obliterated by that breach. [241-242]

Although the judge in a civil action correctly struck the jury's award of attorney's fees to the plaintiff for his separate civil action against a third party on the ground that the plaintiff had no rights against the third party with which the defendants interfered, the admission of evidence of the amount of the attorney's fees was not so prejudicial as to require a new trial, in that the award of attorney's fees was separate from the damage awards for the claims against the defendants. [242-244]

In a boat owner's action for breach of contract and misrepresentation related to the defendants' withholding of access to a boat slip at a town's docks, an award of future damages was appropriate in the circumstances of the case where testimony enabled the jury to arrive at an approximate estimate of the plaintiff's future damages from having to rent a transient boat slip while on the waiting list for a permanent slip [244-246]; nonetheless, the judge erred by applying prejudgment interest to this portion of the plaintiff's damages, because the damages had not yet been incurred, and their precise amount had not yet been established [246-247].

In a civil action for breach of contract, there was no merit to the defendants' argument that the plaintiff failed to prove that the contract in question was a multi-year contract, as the plaintiff's trial testimony alone was sufficient

[1]Alfred Pickard and Donna Pickard. We take the spelling of the individual defendants' surname as it appears on the complaint.

to support the jury's verdict [247-248]; likewise, the defendants' argument that the court erred in excluding evidence concerning the Statute of Frauds and in failing to instruct the jury on that issue was unavailing, where the oral contract in question was enforceable because it was indefinite and thus could have been performed within the year [248].

CIVIL ACTION commenced in the Superior Court Department on June 30, 1995.

The case was tried before *Francis R. Fecteau,* J., and postverdict motions were heard by him.

*Evan T. Lawson* for the plaintiff.

*James H. Quirk, Jr.,* for the defendants.

GREENBERG, J. Following a Superior Court jury verdict, an amended judgment in the amount of $27,059 was entered in favor of the plaintiff, Kevin Coady. That sum reflected the trial judge's reduction of the verdict for breach of contract and misrepresentation related to the defendants' (Wellfleet Marine Corporation, Alfred Pickard, and Donna Pickard) withholding of access to a boat slip at the town of Wellfleet (town) docks. The amended judgment also included statutory prejudgment interest.[2] On the defendants' counterclaim for work, labor, and materials supplied to the plaintiff during the 1994 boating

---

[2]In greater detail, the proceedings below were as follows. The jury returned a verdict in favor of the plaintiff on both the breach of contract and misrepresentation counts and awarded damages of $80,408 ($46,179 for the past and future damages related to the loss of the boat slip and $34,229 for attorney's fees related to a separate action the plaintiff brought against the town in which he sought to enforce the right to dock his boat in a slip at the town marina).

In November, 2001, the defendants filed postverdict motions for judgment notwithstanding the verdict, to amend the judgment, and for a new trial. After a hearing in March, 2002, the trial judge allowed a portion of the defendants' motion for judgment notwithstanding the verdict and ruled that the plaintiff could not recover his attorney's fees as part of compensatory damages; the judge also set aside a verdict in favor of Coady Corporation, a plaintiff below. The judge denied the defendants' motion for a new trial, provided that the plaintiff accepted a remittitur of the compensatory damages. The plaintiff accepted the remittitur, resulting in an amended judgment in his favor for $27,059, plus statutory prejudgment interest. The defendants filed a motion to alter or amend the amended judgment on the ground that prejudgment interest should not apply to the future damages portion of the amended judgment. That motion was denied by the trial judge.

season, the jury awarded the defendants $3,872. Both parties have appealed.

There was evidence at trial that would have permitted the jury to find the following facts that we briefly summarize, supplemented by other facts pertinent to the various issues raised in the appeals.

Alfred Pickard and Donna Pickard run Wellfleet Marine Corporation. Beginning in 1983, they provided the plaintiff with a mooring for his boat in Wellfleet harbor, as well as dry-dock and repairs during the winter months. In 1985, the plaintiff told the defendants that he wanted to buy a boat that would be too large for a mooring and would require a boat slip with water, electricity, and easy access. The defendant, Alfred Pickard, leased just such a boat slip from the town. Neither of the individual defendants told the plaintiff that there was a waiting list for boat slips in the town and that it took a minimum of ten years to acquire a slip. According to the plaintiff, the defendants told him that they would provide him with a slip for as long as he wanted if he would have them repair and store his boat. The defendants deny that they told the plaintiff that he could have the slip indefinitely.

From 1985 to 1994, the plaintiff kept his boat in the boat slip that Alfred Pickard leased from the town. During that time, the defendants billed the plaintiff for use of the slip, repairs, parts, supplies, and winter storage. In the winter of 1994 to 1995, Donna Pickard asked the plaintiff, who owned an automobile dealership, if he could obtain a specially configured van for her to purchase. She told him that he could apply the money he owed for the 1994 slip rental to the price of the van. The plaintiff told her that the van would cost about $23,000, and she told him to order it.

The parties had a falling out in the spring of 1995. The plaintiff told Donna Pickard that the van was available. She told him that she would pay only $10,000 for the van and that he should pay the rest. When the plaintiff refused, the defendants told him that he could not bring his boat back to the slip in town. In order to keep his boat in the town harbor, the plaintiff was forced to rent a transient slip from the town for $343 per

week. He had to renew the slip each week, and there was no guarantee that a transient slip would continue to be available.

In 1997, the plaintiff brought a separate action against the town, its harbormaster, and the town's board of selectmen seeking a permanent injunction requiring the town to provide him with a slip for his boat. After learning that the town had a waiting list for residents seeking slips, the plaintiff put his name on the list in early 1998. Evidence at trial suggested that the plaintiff will not be eligible for a slip for ten to fifteen years after he was first put on the list. In 2001, the plaintiff reached a settlement with the town whereby he is guaranteed the use of a slip at the transient rate until his name comes up on the waiting list. The jury in this case determined that the defendants' breach of contract and misrepresentation caused the plaintiff to bring the case against the town to protect his rights, and the jury therefore included attorney's fees in his damages award.[3]

1. *Jury instruction.* During a precharge conference, the plaintiff submitted a request for jury instructions, including an instruction that "[w]hen one party to a contract breaches the agreement to be performed, he cannot then recover on the terms of the contract because he has not upheld his end of the bargain. His voluntary failure to complete the agreement prevents his recovery, except where there is an honest intention to go by the terms of the contract." When the judge delivered the jury instruction, he omitted this requested instruction. The plaintiff's counsel then repeated the request: "I would ask you to instruct the jury that if they find that there was a breach of contract by a defendant, Wellfleet Marine Corporation, that they should not consider Wellfleet Marine Corporation's counterclaim. Because I believe the law is that if you breach your contract, you can't recover on the contract, you can't recover a quantum meruit either." The judge again declined to give the instruction, noting that he was "not sure that's a correct statement of law," and that it "would result in a windfall for the plaintiff."

The defendants claim that the plaintiff neglected to preserve his right to appeal the exclusion of the instruction because he failed to file appropriate posttrial motions seeking a new trial

---

[3]Upon the defendants' motion for judgment notwithstanding the verdict, the judge set aside the attorney's fees awarded by the jury. See note 2, *supra.*

on the basis of the failure to charge the jury as requested. The plaintiff properly preserved this issue for appeal by objecting to the judge's refusal to instruct as soon as the instructions were given. Rule 51(b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 816 (1974), provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The Supreme Judicial Court has held that "[i]f a party requests an instruction, the judge does not give it, the party objects after the charge was given and explains the significance of the request, and the judge acknowledges an understanding of the issue but nevertheless declines to give the instruction, the requirements of rule 51 are unquestionably satisfied." *Flood* v. *Southland Corp.*, 416 Mass. 62, 66 (1993). The plaintiff followed these guidelines and thus preserved this issue for appeal.

Even so, we conclude that the judgment on the counterclaim should stand. Although the jury found that the defendants breached their contract with the plaintiff when they refused to let him return his boat to the slip for the 1995 boating season and thereafter, the evidence demonstrates that the defendants had upheld their agreement to provide the slip for the 1994 boating season and had performed various services and repairs for the plaintiff in 1994. Despite the defendants' eventual breach, the plaintiff remained obligated to pay for the services he received before the breach occurred.

Under Massachusetts case law, one party's breach of a contract does not bar recovery for the other party's breach if the different parts of the contract can be considered separable or divisible. The law in Massachusetts is consistent with the flexible rule of the Restatement (Second) of Contracts § 240 (1981), which states that "[i]f the performances to be exchanged under an exchange of promises can be apportioned into corresponding pairs of part performances so that the parts of each pair are properly regarded as agreed equivalents, a party's performance of his part of such a pair has the same effect on the other's duties to render performance of the agreed equivalent as it would have if only that pair of performances had been promised." See

*Potter & McArthur, Inc.* v. *Boston*, 15 Mass. App. Ct. 454, 455-456 (1983).

Even where there is only one agreement covering all the terms of a contract, "it may be that the performance under the contract will be divided into different groups, each set embracing performances which are the agreed exchange for each other, the result being that the contract is entire but divisible." *Bianchi Bros.* v. *Gendron*, 292 Mass. 438, 445 (1935). In this case, performances under the contract were implicitly divided by boating season, and payment for the defendants' performance in 1994 was separate from payment for future seasons. Thus, the plaintiff owed the defendants for their 1994 performance regardless of the later breach. See *id.* at 446; *Carrig* v. *Gilbert-Varker Corp.*, 314 Mass. 351, 357-358 (1943).

In *Lease-It, Inc.* v. *Massachusetts Port Authy.*, 33 Mass. App. Ct. 391, 394 (1992), the defendant breached its contract with the plaintiff in November, 1983, by closing a street that provided the plaintiff with access to Logan International Airport. The plaintiff also breached the contract by not paying fees it owed the defendant for the period from December, 1983, to June, 1984. *Ibid.* Noting that "there was a period of time where [the defendant], alone, was in breach of the agreement," the court held that the plaintiff, "despite its eventual material breach, still may recover damages from [the defendant] for its breach; the measure of damages is limited, however, to the period between [the defendant's] breach and [the plaintiff's] . . . breach." *Id.* at 397. Thus, the defendants in this case may recover damages from the plaintiff for his failure to pay for the services they provided in 1994, the season before they breached the contract.

2. *Attorney's fees.* The trial judge did not err in allowing that portion of the defendant's motion for judgment notwithstanding the verdict on the jury's award of attorney's fees to the plaintiff as compensatory damages stemming from the plaintiff's lawsuit against the town. As the plaintiff acknowledges, the general rule in Massachusetts is that each party is responsible for his own attorney's fees. The facts of this case do not fit within the narrow exception to that rule that permits an award of attorney's fees where a defendant's tortious conduct requires a plaintiff to sue or defend against a third party.

The plaintiff argues that in any case where a defendant's wrongful conduct leads a plaintiff to sue a third party to protect his interests, the plaintiff may recover from the defendant his attorney's fees for the case against the third party. The case law does not support such a broad exception to the general rule. In *M.F. Roach Co.* v. *Provincetown*, 355 Mass. 731, 732 (1969), the Supreme Judicial Court upheld an award of attorney's fees to the plaintiff against a defendant corporation where that corporation had intentionally interfered with the plaintiff's contractual rights with the town, requiring the plaintiff to sue the town in order to protect its rights. That decision does not support an award of attorney's fees here because there has been no intentional interference with contractual rights.

In this case, the defendants did not interfere with any right the plaintiff had with the town. Massachusetts case law does not support an award of attorney's fees in such a case. In *Harrison* v. *Textron, Inc.*, 367 Mass. 540, 555 (1975), the court distinguished *M.F. Roach Co.* v. *Provincetown, supra,* because "[i]n that case the defendant 'wrongfully interfered' with the plaintiff's performance of a contract with a third person." Moreover, in *Mailhiot* v. *Liberty Bank & Trust Co.*, 24 Mass. App. Ct. 525, 530-531 (1987), the plaintiff was not entitled to an award of attorney's fees from the bank president who had tortiously interfered with her employment at the bank. The plaintiff "was not suing to hold the bank to the contract of employment or recover damages for its breach. She could not, because she was an at-will employee. . . . She had no rights under her employment contract against the bank, and so she was not forced to sue to enforce nonexistent rights." *Id.* at 532. Similarly, in this case, the plaintiff had no contract with the town and thus was not forced to sue to enforce nonexistent rights.

The plaintiff claims that "the trial judge took too narrow a view of the scope of the exception," but the case law indicates that the exception is in fact quite narrow. "There are limited circumstances in which counsel fees are properly awarded. . . . [W]hen the plaintiff is forced to sue a third party to hold it to the bargain with which a defendant intentionally and wrongfully interfered, attorney's fees in that action may properly be

awarded against the tortfeasor. Of course, if the plaintiff had no rights against the third party, [he] would not be entitled to counsel fees incurred in asserting those nonexistent rights." *O'Brien* v. *New England Tel. & Tel. Co.*, 422 Mass. 686, 696-697 (1996) (citations omitted). Because the plaintiff in this case had no rights against the town with which the defendants interfered, the trial judge was correct in striking the award of attorney's fees.

Even so, the admission of evidence of the amount of the attorney's fees was not so prejudicial as to require a new trial. The defendants argue that the admission of this evidence predisposed the jury to find for the plaintiff on the breach of contract and misrepresentation counts, and that the exclusion of this evidence could have made a material difference in the outcome of the case.

"[A]n error in the admission of evidence should not be ground for a new trial unless the error has injuriously affected the 'substantial rights of the parties.' " *Grant* v. *Lewis/Boyle, Inc.*, 408 Mass. 269, 274 (1990), quoting from G. L. c. 231, §§ 119, 132. The admission of evidence injuriously affects the substantial rights of a party where the jury might have reached a different result if the evidence had been excluded. *Id.* at 275. In this case, it does not appear that the jury would have reached a different result on the breach of contract and misrepresentation counts if the evidence of attorney's fees had been excluded. The jury awarded damages using a special jury verdict form that asked the jury to make four separate determinations regarding liability and damages for each count: breach of contract by the defendants, misrepresentation by the defendants, legal fees for the plaintiff's action against the town, and the defendants' counterclaim for goods and services provided. Thus, the jury's award of attorney's fees was separate from the damage awards for the other claims, and the outcome of the over-all trial was not prejudiced. The admission of evidence about attorney's fees did not injuriously affect the defendants' substantive rights.

3. *Future damages.* The defendants assert that the damages awarded to the plaintiff for his future expenses in renting a transient boat slip while on the waiting list for a permanent slip should be set aside as speculative. After remittitur, the trial

judge let stand $13,080 in future damages. The judge explained in his memorandum of decision that it was reasonable to give "the plaintiff a maximum waiting period [for a boat slip] of fifteen years from 1997, . . . which totals ten future boating seasons beginning in 2002." The evidence at trial concerning the length of time it takes for an applicant to get a slip from the town came from the testimony of the town harbormaster. He testified that "it takes between ten and fifteen years" to reach the top of the waiting list. On cross-examination, he acknowledged that there were too many variables to be able to say with certainty when someone will get a slip. He agreed that it was "speculation." On redirect examination, however, he agreed that his estimate of ten to fifteen years took all the variables into account.

The plaintiff has the burden of proving his damages "with reasonable certainty." *Agoos Leather Cos.* v. *American & Foreign Ins. Co.*, 342 Mass. 603, 608 (1961). *Our Lady of the Sea Corp.* v. *Borges*, 40 Mass. App. Ct. 484, 489 (1996). Although mere speculation is insufficient, "the amount of damages need not be proved with mathematical precision; the extent of damages often must be left to estimate and judgment." *Our Lady of the Sea Corp.*, *supra* at 488. Evidence that enables the jury to arrive at an approximate estimate of damages is sufficient. *Agoos Leather Cos.* v. *American & Foreign Ins. Co.*, *supra* at 608.

Here, the testimony of the harbormaster enabled the jury to arrive at an approximate estimate of the plaintiff's future damages. Although the harbormaster acknowledged being unable to determine with certainty how long the plaintiff would remain on the waiting list, "[t]he fact that there may be an element of uncertainty as to the amount of damages does not bar their recovery." *Stuart* v. *Brookline*, 412 Mass. 251, 256-257 (1992).

An element of uncertainty is permissible particularly in cases involving "business torts, where the critical focus is on the wrongfulness of the defendant's conduct." *Ricky Smith Pontiac, Inc.* v. *Subaru of New England, Inc.*, 14 Mass. App. Ct. 396, 426 (1982). In this case, the defendants' misrepresentation contributed to the plaintiff's uncertainty as to when he would

obtain a permanent boat slip. Although proof of the precise amount of future damages is impossible, "the defendants should not be permitted to escape the consequences of their wrongful conduct that caused harm to the plaintiffs if some reasonable damages calculation can be made." *Augat, Inc.* v. *Aegis, Inc.*, 417 Mass. 484, 491 (1994). See *Our Lady of the Sea Corp.* v. *Borges*, 40 Mass. App. Ct. at 488 ("A tortfeasor may not complain that damages cannot be ascertained with precision when his wrongdoing caused the uncertainty"). The award of future damages was appropriate in the circumstances of this case.

4. *Prejudgment interest.* The defendants argue that the judge improperly awarded prejudgment interest on the future damages portion of the damages award because such interest should not be added to damages for losses that have not yet occurred. We conclude that the trial judge erred in awarding prejudgment interest on this portion of the damages.

The defendants cite *Conway* v. *Electro Switch Corp.*, 402 Mass. 385 (1988), to support their argument that prejudgment interest should not be added to an award of future damages. In *Conway*, the court refused to add prejudgment interest to an award for loss of future earnings in an employment discrimination case. The court held that "interest is awarded to compensate a damaged party for the loss of use or the unlawful detention of money. . . . We, therefore, see no justification for adding interest to damages which, by definition, are for losses to be incurred in the future." *Id.* at 390.

On the other hand, the court's holding in *Conway* does not apply to all future damages. The court noted that "we view the loss of earning *capacity* as a present loss, although the determination of the extent of the loss necessarily takes into account future losses." *Id.* at 391 n.9. See *Carey* v. *General Motors Corp.*, 377 Mass. 736, 746 (1979). As we later elaborated, "[t]he distinction is a fine one, but it is serviceable: that in tort cases for personal injuries or property damage, compensation for future lost wages will be treated conceptually as an already incurred loss of earning capacity; while, in discrimination cases under G. L. c. 151B, expected future income reductions will be treated conceptually as losses not yet incurred . . . ." *Kuppens*

v. *Davies*, 38 Mass. App. Ct. 498, 500 (1995). Prejudgment interest is applied to the entire amount of the judgment in the former cases. *Ibid.*

Thus, whether prejudgment interest was properly added in the present case turns on whether the plaintiff's "future damages" are to be considered already incurred losses or losses not yet incurred. In the instant case, we conclude they are the latter. This case is distinguishable from *Commonwealth* v. *Johnson Insulation*, 425 Mass. 650, 665 (1997), where the court held that prejudgment interest was properly added to damages for asbestos removal costs, including the cost of abatement projects that had yet to be undertaken. The court determined that "[t]he injury to the Commonwealth's property occurred when asbestos-containing products were installed in its buildings . . . . The Commonwealth's projected abatement costs are not 'future damages,' but are rather an estimation of damage that has already occurred, for which compensation is already due." *Id.* at 665-666. In this case, the plaintiff's costs of renting a boat slip from the town are "future damages," and, as noted above, the precise amount of these damages has not been established. The judge thus erred by applying prejudgment interest to this portion of the plaintiff's damages.

*5. Multi-year contract.* The defendants claim that the plaintiff did not meet his burden of proof concerning the existence of a multi-year contract between the parties. They argue that he should therefore be limited to the recovery of damages for the 1995 boating season only. There is no merit to this argument.

The plaintiff testified at trial that the parties had a multi-year contract entitling him to the use of the boat slip every boating season. The defendants assert that this testimony contradicts previous statements the plaintiff made, as well as the testimony of Alfred Pickard that the parties did not have a multi-year contract. However, the plaintiff's trial testimony alone is sufficient to support the jury's verdict, and although the jury could have chosen not to believe the plaintiff's trial testimony, there is no legal basis to disturb the verdict. "Conflicting evidence often exists at trial and judges and juries are in the best position to assess the credibility of the witnesses." *Whitehall Co.* v. *Barletta*, 404 Mass. 497, 503 (1989). The jury had the opportunity

to assess the credibility of the plaintiff and of Alfred Pickard, and they believed the testimony of the former. " '[I]t is of no avail for the defendant[s] to argue that there was some or even much evidence which would have warranted a contrary finding by the jury.' The court may not substitute its judgment of the facts for that of the jury." *Tosti* v. *Ayik*, 394 Mass. 482, 494 (1985), quoting from *Curtiss-Wright Corp.* v. *Edel-Brown Tool & Die Co.*, 381 Mass. 1, 4 (1980).

6. *Statute of Frauds.* The defendants contend that the court erred in excluding evidence concerning the Statute of Frauds and in failing to instruct the jury on that issue. The defendants claim that the Statute of Frauds precludes the plaintiff from collecting damages for the breach of an oral multi-year contract because the Statute of Frauds prohibits enforcement of oral contracts that cannot be performed within one year. This argument is also without merit.

The oral contract in this case is enforceable because it could have been performed within the year. "The Statute of Frauds 'applies only to contracts which by their terms cannot be performed within the year. It does not apply to contracts which may be performed within, although they may also extend beyond, that period.' " *Boothby* v. *Texon, Inc.*, 414 Mass. 468, 479 (1993), quoting from *Doherty* v. *Doherty Ins. Agency, Inc.*, 878 F.2d 546, 551 (1st Cir. 1989). Because the contract here was indefinite, it could have been performed within one year. For example, the plaintiff could have died or the defendants could have gone out of business within one year. See *ibid.* (contract for permanent employment was enforceable because employee could have died or employer could have discontinued its business within one year). Thus, the Statute of Frauds did not apply, and the judge did not err in excluding evidence and instructions on this issue.

7. *Conclusion.* The trial judge was correct in striking the award of attorney's fees, but the admission of evidence about those fees did not injuriously affect the defendants' substantial rights. We affirm the judgment on the defendants' counterclaim and the judgment for the plaintiff's "future damages." However, the addition of prejudgment interest to the "future damages" award was error, and the damages should be recalculated

accordingly. The plaintiff's trial testimony was sufficient to support the jury's verdict that there was a multi-year contract. Finally, there was no error in excluding evidence and instructions concerning the Statute of Frauds.

The order denying the defendants' motion to alter or amend the amended judgment is reversed. That portion of the amended judgment dated April 23, 2002, awarding prejudgment interest on the award of future damages is vacated, and the matter is remanded to the Superior Court for recalculation of prejudgment interest consistent with this opinion. In all other respects, the amended judgment is affirmed. The judgment entered for the defendants on their counterclaim is affirmed.

*So ordered.*