TERESA QUINTON *vs.* JOSEPH H. GAVIN, individually and as trustee[1] (and four companion cases[2]).

No. 04-P-999.

Norfolk. May 10, 2005. - October 19, 2005.

Present: COWIN, COHEN, & KATZMANN, JJ.

*Consumer Protection Act,* Accountant, Attorney's fees, Trade or commerce. *Trust,* Personal liability of trustee. *Damages,* Interest.

The plaintiffs in a civil action were entitled to seek relief under G. L. c. 93A, § 9, for injuries arising from the unfair and deceptive acts and practices of the defendant, an accountant and self-described professional trustee who, in the ordinary course of his business, systematically misused funds entrusted to him [796-799]; further, the judge used an appropriate interest rate in calculating the award of damages on the G. L. c. 93A claim, and the evidence supported other damages award calculations [799-801]; finally, the plaintiffs were entitled to attorney's fees in connection with their appeal [801].

CIVIL ACTIONS commenced in the Superior Court Department, one each on May 13, 1998; August 27, 1998; and January 15, 1999; and two on January 27, 1999, respectively.

After consolidation, the cases were heard by *Gordon L. Doerfer,* J.

*Michael B. Roitman* for the defendant.

*Stephen R. Follansbee* (*Richard M. McLeod* with him) for the plaintiffs.

COHEN, J. The plaintiffs in these related cases brought actions against Joseph Gavin, an accountant and self-described profes-

---

[1] Of the McCarthy Family Trust.

[2] George H. Delorey, Ruth Delorey, George W. Delorey, Elizabeth McMahon, and Ellen Delorey *vs.* Joseph H. Gavin; Thomas Doucette and David Doucette *vs.* Joseph H. Gavin, individually and as trustee; Paul Budrow, Martha Budrow, and Linda Kleitz *vs.* Joseph H. Gavin, individually and as trustee; and Arline C. Lynch *vs.* Joseph H. Gavin, individually and as trustee.

sional trustee, on account of his systematic misuse of funds entrusted to him. The cases were consolidated for trial, and after a lengthy bench trial before a judge of the Superior Court, the judge found that Gavin breached his fiduciary duties and violated G. L. c. 93A, and ordered judgments for the plaintiffs in amounts commensurate with their respective losses. Pursuant to c. 93A, § 9, the judge trebled some of the awards and ordered Gavin to pay the plaintiffs' attorney's fees in those cases.

On appeal, Gavin argues that he could not be found liable under G. L. c. 93A because, as matter of law, the statute does not apply to claims brought against a trustee by trust beneficiaries. Gavin also contends that there was insufficient evidence to justify the judge's use of a twelve per cent commercial interest rate to calculate some of the damage awards, and that other awards also lacked evidentiary support. We affirm.

1. *Background.* The full flavor of Gavin's wrongdoing is captured in the trial judge's painstaking seventy-page findings of fact and conclusions of law. In a nutshell, the judge found Gavin to be a thoroughly reprehensible character who swindled the plaintiffs and then compounded his misdeeds by engaging in deceptive litigation tactics and testifying falsely at trial. We summarize those findings and conclusions that bear most directly on the appellate issues.

At least as early as 1979 and continuing through the late 1990's, Gavin, a certified public accountant and financial adviser, engaged in the business of being a professional trustee. He used the title "Independent Trustee" on his letterhead and actively solicited clients to use his services, telling them that their current financial arrangements were not prudent or safe and that they would be better protected by giving him their money to put into trust and manage. As a result of his solicitations, Gavin established approximately fifty trusts of which he was the trustee and his clients or their heirs were the beneficiaries.

Gavin charged his clients substantial fees to set up the trusts, as well as annual administration fees and fees to prepare and file trust tax returns. He never advised his clients to seek independent legal advice about the desirability or wisdom of

setting up a trust and prepared all the trust documents himself without consulting counsel. Then, once the trusts were created, he treated them as a source of financing and income for himself, paying himself generously for negligible services and borrowing trust funds for his personal and business use.

From the outset, Gavin's true motivation was to provide a ready source of cash for himself and certain business associates. As the judge stated, "Gavin's intent when he set up each trust was to enable him to gain easy access to funds for his own purposes. He never had the best interests of his clients in mind. His purpose *ab initio* was to deceive and plunder."

By using the money entrusted to him as a source of financing for his various ventures, Gavin was relieved of the need to borrow money on the open market. He utilized his clients' trust funds to make unsecured "loans" to himself and his business associates on favorable terms. His bookkeeping entries would indicate that these loans carried a certain interest rate (between six and nine per cent — most often seven per cent) which was advantageously low during the period in question. Gavin admitted that unsecured loans should carry a higher rate of interest than secured transactions. He also testified that on an occasion when he lent money to someone else from his own family trust, he charged twelve per cent interest and took a mortgage as security. Based upon this evidence as well as general knowledge, the judge found that during the relevant time periods, if Gavin had obtained money from normal commercial sources, he would have had to take out unsecured personal loans bearing interest charges of at least twelve per cent per annum.

In addition to engaging in self-dealing, Gavin breached his fiduciary duties in a number of other ways. He deliberately concealed his activities and misled his clients, he failed to invest trust assets prudently, his record keeping was chaotic and inaccurate, and he commingled trust property with his own property. The judge found that in these and other respects Gavin acted intentionally and in bad faith.

Each of the plaintiffs in the consolidated cases was a settlor or beneficiary of one or more trusts established and run by

Gavin. So far as is relevant to the issues on appeal, their individual cases may be summarized as follows:

a. *Quinton case.* In 1994, Thomas and Helen McCarthy, an elderly couple with no children, were persuaded by Gavin to place more than $882,000 into a trust, the McCarthy Family Trust, for the benefit of their grandniece, plaintiff Teresa Quinton. Gavin told the McCarthys and Quinton that he was investing the money in "government mortgages," but instead used the funds for personal and business purposes that were unrelated to and conferred no benefit upon the trust.

Between 1994 and 1998, Gavin made so many unsecured, low interest loans and outright payments to himself and entities controlled by him that he exhausted the corpus of the trust. Although prior to trial Gavin made restitution of $1,017,000, the judge ordered him to disgorge an additional $296,445, representing fees he had charged and profits he had made by borrowing money from the trust at below-market rates. In calculating Gavin's wrongful profits, the judge used twelve per cent as the annual rate that Gavin would have had to pay for personal, unsecured commercial loans. Thus, for each of the loans in question, the judge assessed the difference between what the trust would have earned at twelve per cent interest and what it actually earned at the rate identified in Gavin's records and paid by him as part of his initial restitution. The judge also found Gavin in violation of G. L. c. 93A and awarded treble damages and attorney's fees pursuant to § 9 of the statute.

b. *Delorey case.* To a large extent, the claims of the Delorey family were found to be time-barred, but two aspects of their case resulted in damage awards. After first determining that Gavin held funds transferred to him by George H. Delorey and Ruth Delorey in constructive trust for them, the judge found that Gavin had lent the Deloreys' money at an advantageously low interest rate to entities controlled by Gavin. Thus, as in the Quinton case, the judge ordered Gavin to make restitution in an amount representing the difference between what the Deloreys earned at the rate charged and what they would have earned at a market rate of twelve per cent interest. The judge then trebled this amount pursuant to G. L. c. 93A, § 9.

The judge also awarded damages to the Deloreys' son, George

W. Delorey, who was advised by Gavin to borrow $70,000 from a trust controlled by Gavin, to keep $20,000 for personal needs, and to place the remaining $50,000 into a trust established by his parents, the Rugged Trust, of which he was the beneficiary. Gavin told George W. Delorey that the Rugged Trust would lend the $50,000 at a higher rate of interest than the rate he was paying on the loan he took out, thereby generating a profit that could be used as a nest egg or retirement fund. In fact, the exorbitant fees charged by Gavin negated any economic benefit that might have been derived from the arrangement and substantially depleted the Rugged Trust. The judge awarded George W. Delorey damages in the amount of the fees charged by Gavin and trebled them pursuant to G. L. c. 93A, § 9.

c. *Budrow case.* Gavin created a trust for Norma Tirrell, the Sheltie Trust, which was intended to benefit Tirrell's two daughters, Linda Kleitz and Martha Budrow. Upon Tirrell's death, Gavin split the Sheltie Trust into two trusts, the Adnil and Ahtram trusts. The judge found that this split conferred no benefit upon Kleitz and Budrow and was effectuated for the sole purpose of doubling Gavin's trustee fees. The judge ordered Gavin to repay these fees to the beneficiaries.

d. *Doucette case.* In connection with a real estate venture of his own, Gavin lent $50,000 from a trust created by Jeanette Doucette for the benefit of her three sons. The judge awarded the Doucette plaintiffs damages of $66,000 on the theory that the $50,000 loan, which was imprudent and yielded no profits, should have generated returns of twelve percent per annum, or $6,000 a year for eleven years.

e. *Lynch case.* Arlene Lynch created a trust ostensibly for the benefit of four relatives, but in reality for her own support and expenses. The judge therefore concluded that Gavin held all of the trust's assets in constructive trust for Lynch. Among the assets placed in the trust was a life insurance policy. Gavin's records showed that in 1992 and 1993, he listed the policy as an asset of the trust, but that after 1993, no checks for premium payments were issued, and the policy no longer was recorded as an asset. Because Gavin was unable to account for the policy, the judge awarded Lynch $10,000, which was the value that Gavin had assigned to it in his records.

2. *Discussion.* a. *General Laws c. 93A liability.* The principal legal question presented by this case is whether Gavin may be held liable to the plaintiffs in the Quinton and Delorey cases under G. L. c. 93A, § 9. In support of his position that the statute does not apply, Gavin relies upon two cases decided under G. L. c. 93A, § 11, *Steele* v. *Kelley*, 46 Mass. App. Ct. 712 (1999), and *Lattuca* v. *Robsham*, 442 Mass. 205 (2004). He interprets these cases broadly to mean that a trustee administering a trust may never be liable to a trust beneficiary under c. 93A. We think these authorities are not applicable in the circumstances presented here, and conclude, as did the trial judge, that this is a proper case in which to impose c. 93A liability.

In *Steele* v. *Kelley*, *supra*, the beneficiary of a real estate trust brought suit against the trustee alleging breach of fiduciary duty in the administration of the trust. Because it was an internal dispute between coventurers in a business enterprise, we held that G. L. c. 93A did not apply. *Id.* at 726-727. Likewise, in *Lattuca* v. *Robsham*, *supra* at 209, the Supreme Judicial Court, citing *Steele* v. *Kelley*, *supra* at 726, held that the plaintiff, a beneficiary of a real estate trust, could not sue the defendant, a lender engaged in commercial transactions with the trust, solely on account of his actions in administering the trust as the trust's agent, because the defendant had acted as part of the same business venture along with the plaintiff and other friends and relatives. As such, the claim against him alleged a private grievance outside the scope of c. 93A. *Lattuca* v. *Robsham*, *supra* at 208-209.

Properly understood, *Steele* and *Lattuca*, *supra*, do not establish a rule that G. L. c. 93A claims invariably are prohibited against trustees or other fiduciaries; rather, they are expressions of the general principle that violations of c. 93A must take place in the conduct of "trade or commerce." See G. L. c. 93A, § 2(*a*). More particularly, they illustrate that in cases brought pursuant to § 11 of the statute, there can be no liability arising from private disputes between parties to the same business venture. See *Szalla* v. *Locke*, 421 Mass. 448, 451 (1995), and cases cited. Whether a transaction is a private business venture and therefore not actionable under the statute depends, however,

upon a careful analysis of the particular circumstances of each case. See *Newton* v. *Moffie*, 13 Mass. App. Ct. 462, 469-470 (1982). Thus, for example, in *Grand Pac. Fin. Corp.* v. *Brauer*, 57 Mass. App. Ct. 407, 416 (2003), where an attorney misappropriated escrowed funds belonging to the plaintiff, we distinguished *Steele* v. *Kelley, supra*, and held that liability could be imposed under § 11 notwithstanding the existence of a fiduciary relationship, because the controversy arose from an "extra-enterprise" arrangement among separate business entities.

In the present case, which arises under G. L. c. 93A, § 9, neither the settlors nor the beneficiaries of the trusts managed by Gavin were involved in a common business endeavor with him. The issue therefore reverts to the broader question, applicable to both G. L. c. 93A § 9, and § 11, claims, whether Gavin was engaged in "trade or commerce." Put another way, we must consider whether the trust arrangements in question occurred in a business context or were essentially private and therefore outside the protection of the statute.

When a trust or other fiduciary arrangement serves a principally private function, relief will be unavailable under G. L. c. 93A, § 9, just as it would be under § 11, for failure to meet the trade or commerce requirement. See *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 125 (2002) (relationship between unit owners and condominium trustees who were members of volunteer governing board was private in nature; trustees were not engaged in trade or commerce, and transactions between the trustees and the unit owners were not subject to c. 93A). See also *Gannett* v. *Lowell*, 16 Mass. App. Ct. 325, 328 (1983) (action of the administrator of an estate in obtaining a release from a person who had entered into an agreement with the decedent, the administrator's mother, was not undertaken in the ordinary course of any business, but was a private act undertaken to settle his mother's affairs; release could not be attacked under the provisions of c. 93A); *Edinburg* v. *Cavers*, 22 Mass. App. Ct. 212, 229 (1986) (c. 93A claims could not be asserted on account of the private actions of the trustee of a trust established to hold the voting shares of stock of a closely-held corporation). In this case, however, Gavin's relationships with the plaintiffs cannot properly be characterized as private.

Here, Gavin advertised and sold his services as a financial manager and self-styled "independent trustee" to members of the public in the ordinary course of business. We fail to see why his use of trust arrangements in the conduct of his enterprise converted these commercial dealings into private relationships. We also fail to see why, having sold his trustee services in the marketplace to consumers, Gavin should be treated any differently from similarly situated business professionals who are subject to the reach of G. L. c. 93A, § 9. See, e.g., *Guenard* v. *Burke*, 387 Mass. 802, 809 (1982) (attorneys); *Darviris* v. *Petros*, 442 Mass. 274, 279 (2004) (medical care providers); *Barron* v. *Fidelity Magellan Fund*, 57 Mass. App. Ct. 507, 513-514 (2003) (stock brokerages).

Furthermore, whether or not professional trustees generally should be viewed as engaged in trade or commerce, in this case Gavin's use of the trust form was a sham. As the judge specifically found, Gavin's intent from the outset was to gain easy access to funds for his own purposes rather than to manage the funds for the benefit of his clients. In these circumstances, Gavin may not rely on his status as trustee to shield him from liability under G. L. c. 93A. Indeed, it is difficult to conceive of a more fitting use of the statute than to police the behavior of one whose business was designed to bilk unwitting consumers into entrusting their assets to him for his own private gain. See *Poznik* v. *Massachusetts Med. Professional Ins. Assn.*, 417 Mass. 48, 53 (1994) (purpose of c. 93A "is to improve the commercial relationship between consumers and business persons, . . . to encourage more equitable behavior in the marketplace," and to impose "liability on persons seeking to profit from unfair practices"). The plaintiffs in the Quinton and Delorey cases, as persons injured by Gavin's unfair and deceptive acts and practices in the conduct of his business, were entitled to seek relief under G. L. c. 93A, § 9. See generally, *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 400 (2004).

b. *Damages awards.* The primary issue raised by Gavin with respect to the damages awards is the propriety of the interest rate used by the judge to calculate the awards for disgorgement of profits. We conclude that the judge was entitled to find that twelve per cent was an appropriate rate.

To a large extent, Gavin's own practices and testimony established the benchmark for the judge's selection of the applicable interest rate. There was evidence that when Gavin initiated his self-dealing loans, he assigned interest rates ranging from six to nine per cent, with the majority set at seven per cent. By way of contrast, on an occasion when Gavin lent money from his own family trust, he charged twelve per cent and took a mortgage as security. Gavin also testified that, generally speaking, the interest rate on an unsecured loan should be higher than that on a secured loan. This evidence supported the inference that a rate of twelve per cent was more than reasonable to apply to Gavin's unsecured, self-dealing loans.

In addition, the judge could take into account his general knowledge of economic conditions during the period of Gavin's transgressions. See *Black* v. *Parker Mfg. Co.*, 329 Mass. 105, 112 (1952). It is common knowledge that interest rates were at exceptionally high levels during much of the time when Gavin transgressed. The judge no doubt was aware, for example, that in 1980 and 1982, the Legislature found it necessary to enact two significant increases in the statutory interest rate applicable to tort actions under G. L. c. 231, § 6B — from eight to ten per cent in 1980, see St. 1980, c. 322, § 2, and from ten to twelve per cent in 1982, see St. 1982, c. 183, § 2 — presumably to avoid an undue disparity with rapidly rising commercial rates.

In cases arising from the defendant's consciously wrongful conduct, an element of uncertainty in the calculation of damages is especially permissible. See *Coady* v. *Wellfleet Marine Corp.*, 62 Mass. App. Ct. 237, 245 (2004). The evidence here was sufficient to enable the judge to arrive at an approximate estimate of the plaintiffs' damages, which was all that was required. *Id.* at 245-246, and cases cited.

Gavin's remaining arguments require little discussion. There was no error in awarding Lynch $10,000 to compensate her for the loss of a life insurance policy, which, the judge found, was one of the assets held by Gavin in constructive trust for her. The evidence established not only that Gavin was unable to account for the policy but also that he had assigned it a value of $10,000. The judge was warranted in using that figure as the basis for the damages award.

Other damages calculations questioned by Gavin also were adequately supported. While there may have been conflicting evidence as to the precise amount of Gavin's previous repayments or the fees that he charged, the trial judge was entitled to decide the facts as he did. The judge's findings rested in large part upon his evaluation of Gavin's credibility, which the judge found to be nonexistent. The judge described Gavin as evasive and untruthful and "gave almost no weight to any of [Gavin's] testimony except those aspects that constituted admissions or that were corroborated by other credible evidence." We afford considerable respect to the judge's assessment of the quality of the testimony and see nothing to suggest that any of his damages findings were clearly erroneous. See *Gallagher* v. *Taylor*, 26 Mass. App. Ct. 876, 880-881 (1989).

3. *Appellate attorney's fees.* "In appropriate circumstances, appellate counsel fees may be awarded in claims under G. L. c. 93A." *Bonofiglio* v. *Commercial Union Ins. Co.*, 412 Mass. 612, 613 (1992). Quinton and the Delorey plaintiffs have successfully opposed Gavin's appeal, and they are entitled to awards of costs and attorney's fees in connection with this appeal. Within fourteen days of the issuance of the rescript of this case, these plaintiffs may apply to the panel that heard and decided this appeal for awards of attorney's fees and costs, in the manner described in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

*Judgments affirmed.*