Curran, Dennis J., J.
BACKGROUND
The plaintiff Egenera, Inc. is a Delaware corporation with its principal place of business at 80 Central Street, Boxborough, Massachusetts; the defendant Forest Street Building 165, LLC is a Delaware limited liability corporation with its principal place of business at 40 Mechanics Street, Suite 300, Marlborough, Massachusetts.
Egenera commenced this action to recover $362,000, the amount held by Forest Street as its security deposit for office space it leased at 165 Forest Street, Marlborough, Massachusetts (the premises). Egenera acknowledges that restoration work was required after it vacated the premises, and claims that it was ready, willing, and able to perform such restoration work, but that Forest Street was uncooperative in the process It argues that Forest Street’s failure to cooperate breached the lease, and as a result, it was discharged from its obligations, and is now entitled to the return of the balance of its security deposit, less any proven off-sets. Further, Egenera argues that in *199 addition to this lack of cooperation, under the terms of the lease, the security deposit was required to be returned within forty-five (45) days after its termination, and thus, Forest Street’s actions breached the lease (contract). It also alleges conversion and unjust enrichment.
Forest Street asserts principally that it is entitled to a set-off based on Egenera’s failure to honor its obligations under the terms of the lease, lease amendments, and side letter. Forest Street has also counterclaimed, seeking to recover $436,110.99, representing unpaid rents, costs to repair the water damage and restore the premises to its pre-lease conditions, in accordance with a side letter dated January 28, 2003 and the lease’s fifth amendment. After spending the entire security deposit of $362,000 as a set-off for that restoration work, Forest Street alleges that damages exceed the security deposit set-off by $66,475.99. Forest Street claims Egenera breached the contract because of its failure to obtain required permits and its approval before altering the premises (alterations which Forest Street presently alleges were responsible for the damage caused) and its failure to properly restore the premises and pay rent.[1] Forest Street also charges that Egenera violated G.L.c. 93A.
To complete the procedural landscape, Egenera has responded by raising a host of affirmative defenses, the most important of which, for present purposes, is that Forest Street’s claims are barred by an accord and satisfaction, ratification and acceptance, and its failure to mitigate its own damages.
This case was ably—indeed, superbly—tried by both counsel without a jury. Based upon all credible evidence, the Court makes the following findings of fact and rulings of law.
FINDINGS OF FACT[2]
On or around December 12, 2000, Egenera executed a lease with Forest Street for office space at 165 Forest Street, Marlborough, Massachusetts. The lease operated over an extended period of time and was amended on numerous occasions with the fifth and final amendment occurring on or around November 2, 2010. In addition to these amendments was a side letter, dated January 28, 2003, in which stipulations—specifically concerning the areas that had been converted by Egenera into computer laboratories— were made regarding the required restoration of the premises at the end of the lease period. The original lease stated in §7.07 entitled “Maintenance” that: “(tjenant shall. . . (i) keep and maintain . . . the [pire-mises in good repair and condition (ordinary wear and tear and damage by fire or casualty only excepted) ...” and in §7.08, entitled “Redelivery,” that: “[t]enant shall, subject to the provisions of Articles 17 and 18 hereof, surrender the [plremises to [landlord broom clean and in good condition and repair (ordinary wear and tear, damage by fire or casualty only excepted) (Emphasis added.) Article 17, titled “Damage or Destruction,” addresses what shall take place upon the occurrence of a fire or casualty and §17.01 provides the landlord with the option to terminate the lease in writing within 60 days following a casualty event. If the landlord chooses not to terminate within that 60-day period, §17.02 requires reasonable diligence by the landlord to repair and restore the building within 75 days of such a casualty event. § 17.02 further states:
Landlord shall not be liable for any inconvenience or annoyance to Tenant or injury to the business of Tenant resulting in any way from such damage or the repair thereof, except that, Landlord shall allow Tenant a fair diminution of Rent during the time and to the extent the Premises are unfit for occupancy. (Emphasis added.)
As part of the original lease, Egenera was required to provide Forest Street with a security deposit of $362,000, the balance of which would be returned after any and all defaults by Egenera had been cured. The final lease term ended on April 30, 2011. Forest Street has yet to return any of the security deposit as requested by Egenera, well beyond the contracted 45-day return period. That period ended almost two years ago, on June 15, 2011.
According to the side letter, Egenera was responsible for restoring the portions of the premises on the first and third floors that were converted into computer laboratories. The side letter stipulated that the pre-existing office space Egenera updated did not require restoration to their older, less valuable condition. According to the lease and side letter, all restoration work had to be completed within 45 days after the lease ended. This 45-day period coincides with the 45-day period, at the end of which Forest Street was required to return the security deposit, less any and all set-offs. According to the lease’s §24.01 styled “Security Deposit,” the “[ljandlord shall hold the [sjecurity [djeposit as security for the full and faithful payment or performance by [t]enant of its obligations under this [l]ease . . .” Egenera failed to perform the restoration work as required by the side letter and the lease, and as a result, Forest Street restored the premises and used the security deposit to offset its costs.
The event that is alleged to have triggered the set-off occurred on or around September 26, 2010, when a substantial casualty occurred at the premises. The cause of this casualty is largely unknown beyond the fact that it was traced to the improper discharge of water by a malfunctioning sprinkler-head located in a third-floor computer room. Upon discharge, the flow alarm, that is, a device used to signal when there is water flowing through the fire suppression sprinkler system, did not sound, and thus, no one at either the Marlborough Fire Department, Egenera, or Forest Street was notified of the discharge. The malfunctioning sprinkler head and concomitant alarm failure *200 allowed water to flood the premises for an extended period of time, starting on Saturday, September 25, 2010, when the last Egenera employee left the building, until the next day, when the broken sprinkler head was discovered. This release of water over such a long period of time caused extensive water damage throughout the third, and then down to the second and first floors. According to both the lease and state law, Forest Street, the building owner, was required to inspect and maintain the Are suppression system, including the flow alarm. Although David Depietri, an agent of Forest Street, along with Messrs. Fred Paul and Shawn Brecken, testified that the alarm systems worked several days after September 26, 2010, Depietri could not state whether or not the alarms had been tested before the event.
Forest Street alleges that Egenera, through subcontractors and other third parties, altered the leased office premises in 2002 and that such work was faulty and caused the casually. According to the lease’s §7.05 entitled “Alterations and Improvements,” the “[t]enant shall not make alterations or additions to the [plremises except in accordance with plans and specifications therefore first approved by [l]andlord . . .” (emphasis added). Furthermore, “[tjenant before its work is started shall: secure all licenses and permits necessary . . .” The plans used to complete the alterations to the third floor were approved by Mr. Depietri and the Marlborough Building Department. The Marlborough Fire Department approved the final building permit on March 13, 2003.
Although Forest Street alleges that the alterations were not made in accordance with the approved plans, no inspection was performed or as-built plans ever submitted after the work was completed, leaving this Court without factual basis and thus, to speculate as to whether the alterations were in accordance with the approved plans or city and state building codes. The only evidence that Forest Street has proffered of the work being defective, or not in accordance with the approved plans, is an overturned sprinkler head in the area of the incident. However, according to Mr. Paul Lombardo, the heads were properly inverted based on the remaining design of the room, that is, where the acoustical ceiling tiles had been removed.
Forest Street alleges that the room required intermediate level sprinkler heads because of the ceiling temperature inside the room, but failed to put forth any evidence of the actual ceiling temperature at the time of the incident, or any other time before it, to prove that such heads were required. If, in fact, the release was due to excessive heat in the computer lab that caused the sprinkler head to release, this Court is unable to understand why no other neighboring heads (indeed those within feet thereof) released. Therein lies the rub: neither party has provided credible evidence as to the cause of the sprinkler release.
Following this casually, Forest Street restored the premises to its pre-lease condition. Egenera claims, and the evidence shows, that it was ready, willing, and able to perform its required restoration work, but had difficulty organizing such work with Forest Street. The flood caused extensive water damage throughout the first, second, and third floors of 165 Forest Street. Egenera’s duty to restore the first floor of the premises was eliminated because, before the termination of the lease, Forest Street took it upon itself to demolish and restore the first floor, and thereafter, failed to provide any evidence of the cost associated with that restoration. Further restoration work, unrelated to the casualty event, had to be undertaken by Forest Street on the fourth floor and the roof of 165 Forest Street to remove and repair alterations made to accommodate an Egenera-installed air-conditioning unit required to cool the third floor computer rooms.
Before the lease terminated on April 30, 2011, Egenera proposed to restore the premises. Forest Street emphatically required permits before this restoration plan took effect, from the City of Marlborough and signed by a representative of Forest Street as building owner, for any work that would be completed. Forest Street also required stamped plans for the proposed work, along with a list of vendors (contractors) to be used, with each providing proof of valid insurance. Egenera failed to provide any of these required documents, leading Forest Street to undertake the restoration work itself.
In order to facilitate restoration of the premises, Forest Street hired Sabo Construction, a company owned and operated by Peter Venuto, a close friend and former business partner of Depietri. The two men still have business offices located at the same address. Sabo provided a proposal for the work it was to perform. Egenera challenges this proposal, claiming that it was above and beyond the required scope of work. In fact, Sabo’s proposal covered work required to correct both the casualty and Egenera’s alterations, with no distinction drawn between the two.
After the casualty, Forest Street submitted a claim to its insurance carrier, Hanover Insurance Group and Employers Fire Insurance Company, for the cost of the clean-up and restoration. Forest Street, through its principal Depietri, accepted a final settlement from Hanover on February 2, 2012, of $636,678.11, less the contracted $5,000 deductible. That figure covered cleaning costs of about $154,267.06, repair costs of about $387,411.05, and loss of rent and other expenses, estimated at $100,000. The settlement between Forest Street and Hanover was expressly conditioned on Forest Street waiving any and all rights to any future claims against Hanover for this loss. Depietri also subrogated Forest Street’s potential future claims to Hanover. Forest Street now alleges that the damages resulting from this casually totaled about $850,000. In short, Forest Street is now attempting to *201 recover a total of $1,072,789.10—$636,678.11 in insurance proceeds plus $436,110.99 in additional damages from Egenera.
RULINGS OF LAW
Because Egenera and Forest Street raise purely contractual claims in their complaint and amended counterclaim, only these issues will be decided by this Court.
I. Forest Street Breached the Lease with Egenera by Failing to Return Egenera’s Security Deposit
Egenera was entitled to the return of the balance of its security deposit held by Forest Street 45 days following the termination of the lease. According to the lease in Article 24.01 entitled “Security Deposit,” Forest Street is entitled to spend such amount as necessary to cure any default by the tenant before returning the security deposit. Forest Street has alleged that it consumed the entire security deposit while restoring the premises to its pre-lease condition, doubtless an expensive and time-intensive task However, according to the lease, §7.08 titled “Redeliveiy,” the tenant is responsible to redeliver the premises broom clean, “damage by fire or casualty only excepted.” The event that took place on or around September 26, 2010, has been referred to as a casually event since the inception of this case. Forest Street is now attempting to require the tenant Egenera to go above and beyond the lease to restore the premises to its pre-lease condition.
This Court reads the lease’s contractual language by its plain meaning and according to §7.08, Egenera was under no duty to fix the damage caused by the casualty because such damage fell under the casualty exception. See Slocum et al. v. Natural Products Co., 292 Mass. 455, 456-57 (1935) (holding that a similar casualty exception clause prevents a claim in contract law against lessee by lessor by the plain meaning of the exception); Paley v. Zoltek Corp., No. 916947E, 1994 WL 879711 (Mass.Super. Feb. 17, 1994) [1 Mass. L. Rptr. 517). In Slocum, the Court found that any accidental fire or casualty, even if resulting from negligent actions of the lessee, is covered by such a clause. This interpretation of similarly worded exceptions has continued to be followed by courts throughout the Commonwealth. See, e.g., Lexington Ins. Co. v. All Regions Chemical Labs, Inc., 419 Mass. 712 (1995). Where this Court finds that the release and resulting casualty event was not an intentional act by Egenera, Forest Street cannot prevail.
Forest Street is mistaken when it combines the duty bestowed upon Egenera by the side letter to restore the areas that had been converted by Egenera into computer laboratories, and Egenera’s duty resulting from the casualty event. The side letter states that Egenera is responsible only for restoration of “those portions of the leased premises that Egenera has or is converting to computer laboratories.” It remains that these are the only areas Egenera was responsible for restoring; areas which became indistinguishable by Forest Street’s actions.
Further evidence that the duty to restore following a casualty event befalls the landlord and not the tenant is found in the lease’s Article 17, “Damage or Destruction.” Under §17.01 “Substantial Damage,” if any part of the building is damaged by fire or casualty and, in the landlord’s opinion, requires substantial reconstruction, the landlord may terminate the lease within 60 days after the damage occurred. In the landlord’s opinion, the building necessitated extensive work and reconstruction. Under §17.02, “Restoration,” if the landlord chooses not to so terminate the Lease, the “landlord shall, within seventy-five (75) days after such fire or other casualty, proceed with reasonable diligence to repair and restore the [b]uild-ing . . .” According to those two clauses of the lease, Forest Street had until November 25, 2010 to terminate the lease, and if terminated during that time period, “[r]ent shall be abated as of the date of such damage.” Forest Street did not terminate during that time, and so, had up until December 10, 2010 to proceed with repairing and restoring the building.
Forest Street breached the lease by failing to return Egenera’s security deposit, alleging that it owed Forest Street back-rents which entitled the latter to retain a portion of that deposit. It notified Egenera of its default on January 4, 2011, citing its failure to pay adequate rental amounts during the restoration period. It claims that Egenera was not entitled to a rent set-off for the portion of the premises not fit for occupancy due to the casually event because Egenera caused the loss. In a letter dated November 11, 2010, Mr. Depietri stated that the landlord may allow a fair diminution of the rent if the landlord deems it necessary. However, §17.02 of the lease clearly states:
Landlord shall not be liable for any inconvenience or annoyance to Tenant or injury to the business of Tenant resulting in any way from such damage or the repair thereof, except that, Landlord shall allow Tenant a fair diminution of Rent during the time and to the extent the premises are unfit for occupancy.
Contracts are read using the common understanding of the words used with any ambiguity construed against the drafter. Forest Street, as landlord and contract-drafter, is asking this Court to read the plain meaning of the term “ shall” to confer upon the landlord the option of whether or not to abate Egenera’s rent. Forest Street claims that under a commercial lease, the covenant to pay rent is independent of any other covenants unless clear indication to the contrary exists. Holmes Realty Trust v. Granite City Storage Co., 25 Mass.App.Ct. 272, 277-78 (1988). Section 17.02 is viewed by this Court as such a clear indication.
Given the common understanding of the term “shall,” Forest Street did not have the option of whether or not to abate the rent, but instead, had a *202 duty to do so. Additionally, Forest Street was reimbursed by its insurance carrier for the lost rent in an amount deemed sufficient by that carrier. Forest Street acknowledged in the Sworn Statement in Proof of Loss it submitted to its insurance carrier that its whole loss and damage was $641,679.11, of which $100,000 was to cover lost rent. Accordingly, Forest Street is not entitled to any back-rents due from Egenera to cover the period when the premises were unfit for occupancy. Based upon these facts, Egenera is entitled to a full return of its security deposit, which currently stands at $362,000.
II. Forest Street’s Counterclaims Must Fail for Failing to Prove Damages Clearly and With Specific Evidence
Contract law does not seek to permit a party to recover a windfall at the expense of the other.
The rule of damages in an action for breach of contract is that the plaintiff is entitled in general to damages sufficient in amount to compensate him for the loss actually sustained by him, and to put him in as good position financially as he would have been in if there had been no breach ... He may not insist upon extraordinary or unforeseen elements of damage, but only such as flow according to common understanding as the natural and probable consequences of the breach and such as may be presumed to have been in contemplation of the parties at the time the contract was made.
Pierce v. Clark, 66 Mass.App.Ct. 912, 914 (2006) (quoting Boylston Hous. Corp. v. O’Toole, 321 Mass. 538, 562 (1947)). With these principles in mind, we cannot accept the claims brought by Forest Street because, despite counsel’s skilled advocacy, Forest Street is unable to prove its damages with clear and specific evidence. Coady v. Welljleet Marine Corp., 62 Mass.App.Ct. 237, 245 (2004) (citing Agoos Leather Cos. v. American & Foreign Ins. Co., 342 Mass. 603, 608 (1961)).
The casualty that occurred and required extensive restoration work to correct, is, as stated, separate and distinct from the work required to restore the computer lab areas converted by Egenera. It is undisputed that Egenera’s duty to restore the first floor was discharged by Forest Street’s restoration of that area and its failure to provide specific evidence of the cost of such restoration. Forest Street hired Sabo Construction to perform all required restoration work. Sabo’s proposal to complete the needed work was well above and beyond that provided by any other contractor. In fact, New England Build and Restore, Inc. estimated that the total cost to restore the third floor area, the only area remaining where Egenera had made renovations, was $67,172.14. That figure is the most credible that the Court has received, far exceeding the $22,000 figure provided by Egenera, and well below Forest Street’s estimate, by way of Sabo’s proposal, of $224,750.
A violation of the covenant to repair may result in damages, but those damages must equal the reasonable cost of repairs, a figure not provided in this case. See Corbett v. Derman Shoe Co., 338 Mass. 405, 414 (1959) (citing Crystal Concrete Corp. v. Town of Brain-tree, 309 Mass 463, 470 (1941)). It is clear that the Sabo proposal, when compared with the estimate from New England Build and Restore, Inc., includes items that are duplicative, and encompass work to restore the premises following the casualty event, along with work to restore Egenera’s alterations. These factors lead this Court to believe Sabo’s proposal is grossly exaggerated-—comingling costs for the restoration due to water damage and costs for restoration due to alterations by Egenera.
A party must prove contract damages with reasonable certainty. Without clear evidence showing what damages were incurred by Forest Street due to Egenera’s failure to restore the premises after it was altered, one can only speculate what the actual costs were, and unable to determine an approximate estimate of damages. See Weltfleet Marine Corp., 62 Mass.App.Ct. at 245 (citing Agoos, 342 Mass, at 608). Without more, this Court must rely upon the assessment performed by Forest Street’s insurance carrier as the true and accurate restoration cost. This amount has been approved and already paid out to Forest Street, thereby fully reimbursing it for the loss sustained.
III. Forest Street Fails to Prove a Causal Connection Between Egenera’s Alleged Breach and the Casualty Causing Event
Forest Street alleges that the casualty was caused by Egenera performing faulty, unapproved work to the sprinkler system in violation of the lease. The only work that was approved by Forest Street and the Marlborough Fire Department was performed in 2002, with the city signing off on a final building permit in March 2003. Forest Street claims that it was not allowed into the premises to inspect the work that was performed. This argument is unpersuasive because Forest Street and Egenera were in continuous negotiations over the terms of the lease, with five amendments taking place throughout its life. Even if this claim was supported by credible evidence, according to 780 CMR 901.4, “The owner of every building or structure shall be responsible for the care and maintenance of all fire protection systems, including equipment and devices, to ensure the safely and welfare of the occupants.” It is undisputed that Forest Street did not accept the responsibility of care and maintenance of the sprinkler system because its representatives were unaware of the last time the sprinkler and fire alarm system had been tested. The failure to maintain and care for the system is evident from the fact that the flow alarm never sounded, thereby allowing water to flood the premises over an extended period.
*203 The fourth lease amendment was executed on July 18, 2006. If Forest Street was concerned about the quality of the work that was performed some three years before, or if Egenera was in fact making continued unpermitted renovations, it was well within its power and indeed, its duty under state regulation, to demand access before any further amendment. By not taking any affirmative steps to inspect alterations allegedly made to the sprinkler system—alterations that Forest Street believed, and now alleges were defective—it violated state regulation and, for purposes of this matter, has waived the opportunity to raise that claim of defect. See Owen v. Kessler, 56 Mass.App.Ct. 466, 470 (2002).
“Conditions and clauses of a contract may be waived, either expressly or by words and conduct.” Id. Forest Street took no corrective course of action, and as a result, is barred from now claiming that Egenera’s alleged, yet unproven, breach from early 2003 caused the casualty, without some further evidence showing the relationship between the work performed and the improper discharge of the sprinkler head. A waiver may, of course, be established by conduct of the parties who continue to deal after a deadline has passed which would have resulted in discharge of the parly’s obligations. See McCarthy v. Tobin, 429 Mass. 84, 88-89 (1999). Even if Forest Street’s claims survive the affirmative defense of accord and satisfaction, it is barred from now alleging that it was defective work by Egenera, in breach of the lease, which caused the damage. Forest Street waived any right to raise this claim when it accepted Egenera’s allegedly defective work product by continuously extending Egenera’s lease without first entering and inspecting the premises. See Paeffv. Hawkins-WashingtonRealty Co., 320 Mass. 144 (1946).
IV. Forest Street’s Claims Are Barred by the Doctrine of Accord and Satisfaction
Egenera has raised accord and satisfaction as an affirmative defense to Forest Street’s breach of contract counterclaim. Forest Street’s agreement with Hanover to subrogate its latter rights—those asserted here—prevents it from asserting such claims. “When an insurer settles a claim and thereby acquires a subrogation right, whether by agreement or by operation of law, it succeeds to any right of action that the insured may have against a third person whose negligence or wrongdoing caused the loss ...” Aprthorp v. OneBeacon Ins. Grp., LLC, 78 Mass.App.Ct. 115, 119 (2010) (citing New England Gas & Elec. Ass’n v. Ocean Acc. & Guar. Corp., 330 Mass. 640, 659 (1953)). Had Forest Street believed that it was inadequately covered by its insurance policy, its right of action was in further dealings with that carrier. Instead, Forest Street forfeited such right when it took the insurance proceeds. In accepting the settlement amount covering the cost to restore the premises, an amount which Forest Street now claims is insufficient, Forest Street failed to appropriately mitigate its damages and cannot now assert those subrogated rights in this present action.
Egenera asserts that Forest Street is prevented from collecting further damages because the settlement agreement between Forest Street and its insurance carrier acted as an accord for the damages arising out of the casualty. The settlement amount, in combination with the subrogation agreement satisfied that agreement. The carrier required subrogation as consideration for payment under the policy. This agreement prevents Forest Street from asserting these claims as they were given as fresh consideration for satisfaction with the insurance carrier. See Emerson et ai v. Deming, 304 Mass. 478 (1939). If Forest Street was allowed to assert those claims in this case, then its insurance carrier would be prevented from later asserting those same claims, as they were subrogated to the insurer. Thus, this action for damages beyond that recovered under the accord and satisfaction must fail.
V. Forest Street’s G.L.c. 93A Claim Must Fail Where Egenera Did Not Breach the Lease
Based upon these Findings, a claim under G.L.c. 93A cannot stand because Forest Street has failed to show any “immoral, unethical, oppressive, or unscrupulous” act or practice on the part of Egenera. See Viera v. First Am. Title Ins. Co., 668 F.Sup.2d 282, 292 (D.Mass. 2009). Where Egenera did not breach the lease, it could not have violated G.L.c. 93A. Furthermore, Forest Street has abandoned this claim against Egenera by its memorandum, and so, too, will this Court.
ORDER OF JUDGMENT
Based on the above Findings (and the reasonable inferences that maybe drawn from them) and Rulings, judgment shall enter for the plaintiff Egenera, Inc. in its complaint against the defendant Forest Street Building 165, LLC for breach of contract, conversion, and unjust enrichment in the amount of $362,000, plus interest from June 15, 2011, which I find to be the date of the contract breach (ie., the date the security deposit should have been returned to it), and costs.
Further, judgment shall enter also in behalf of the plaintiff Egenera, Inc. on the defendant Forest Street Building 165, LLC’s counterclaims.

The rent period for which it seeks payment is the time that the premises were wasted and unusable.

See also accompanying Findings on the defendant Forest Street’s Requests.