NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-455                                      Appeals Court

FRANCISCO MARTINEZ, trustee,[1] & another[2] vs.  THOMAS G.
WALDSTEIN.


No. 15-P-455.

Middlesex.       January 13, 2016. - April 29, 2016.

Present:  Cypher, Meade, & Neyman, JJ.

Collateral Estoppel.  Judgment, Preclusive effect.  Negligence,
    Misrepresentation.  Contract, Misrepresentation.  Practice,
    Civil, Judgment on the pleadings, Affidavit.  Subrogation.


Civil action commenced in the Superior Court Department on
July 2, 2014.

The case was heard by Kimberly S. Budd, J., on a motion for
judgment on the pleadings.


Peter S. Brooks for the plaintiffs.
Damian R. LaPlaca for the defendant.


NEYMAN, J.  Francisco Martinez, trustee of the Baystate

Portfolio Trust (trust), and Eric AmRhein (collectively,

plaintiffs), appeal from a judgment of the Superior Court

dismissing their complaint alleging misrepresentation and

_____

[1] Of the Baystate Portfolio Trust.

[2] Eric AmRhein.

violation of G. L. c. 93A, § 11, against the defendant, attorney Thomas G. Waldstein, on the basis of issue preclusion.  This is the second appeal to this court arising out of the plan to purchase the mortgage and foreclose on a property located at 3 Ronald Road in Sudbury (the property) in order to eliminate junior mortgages on the property.  See U.S. Bank, N.A. v. Martinez, 86 Mass. App. Ct. 1111 (2014) (Baystate I).  The plaintiffs' claims in the present action hinge on their allegation that they reasonably relied on Waldstein's representations in an affidavit regarding mortgage priorities on the property.  A Superior Court judge (motion judge) granted Waldstein's motion for judgment on the pleadings, concluding that the plaintiffs could not establish that they reasonably relied on Waldstein's representations because a different Superior Court judge (trial judge) had found otherwise in Baystate I.[3]  The plaintiffs contend that the motion judge erred in applying issue preclusion because the issue of reasonable reliance was not actually litigated in Baystate I, and thus was neither identical to any issues raised in Baystate I nor essential to the judgment in Baystate I.  We affirm.

---

[3] Martinez, as trustee of the trust, was the named defendant in Baystate I.  Martinez and AmRhein are the named plaintiffs in the instant case.  The motion judge found that AmRhein, the sole beneficiary of the trust, was in privity with Martinez, the trustee.  The plaintiffs do not challenge this finding on appeal.

1. Background. We first summarize the relevant facts from the motion judge's decision on Waldstein's motion for judgment on the pleadings, taking those facts stated by the plaintiffs as true. See Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974); Jarosz v. Palmer, 436 Mass. 526, 530 (2002) (Jarosz). We then look to the entire record of Baystate I, with a view toward comparing the issues adjudicated therein with the issues raised by the plaintiffs in the present action. See Boyd v. Jamaica Plain Co-op. Bank, 7 Mass. App. Ct. 153, 160 (1979) (when asked to determine whether issue has been previously litigated, and thus precluded, "we look to the entire record . . . to ascertain what issues were tried and determined and were essential to the judgment").

a. The present action. In September, 2004, Peter Venuto purchased the property and gave a $745,000 mortgage to Countrywide Financial Corporation (Countrywide). In early 2005, Waldstein aided Venuto in transferring ownership of the property to King R.E., LLC, which subsequently granted a $2.65 million mortgage of the property to First Trade Union Bank (First Trade). The First Trade mortgage was subordinate to the Countrywide mortgage.

In November, 2006, Waldstein helped Venuto refinance the Countrywide mortgage, representing both Venuto and Countrywide in the transaction, and serving as agent for the title insurer.

Waldstein failed to obtain a subordination of the First Trade mortgage, and thus the refinanced Countrywide mortgage became subordinate to the First Trade mortgage.  On or about February 11, 2010, Countrywide assigned its mortgage of the property to U.S. Bank, N.A. (U.S. Bank).  Shortly thereafter, First Trade and U.S. Bank began foreclosure proceedings on the property.  In June of that year, U.S. Bank commenced Baystate I, seeking equitable subrogation and a declaration that First Trade's mortgage was subordinate to U.S. Bank's mortgage.  Venuto provided to Waldstein a copy of the papers regarding Baystate I, thus giving Waldstein notice of the legal proceedings.

In July, 2011, while Baystate I was pending, Venuto approached his friend, AmRhein, with a plan for AmRhein to purchase the First Trade promissory note and an assignment of the First Trade mortgage.  On or about July 7, 2011, Waldstein provided to AmRhein an affidavit (the affidavit)[4] that stated, inter alia, that the First Trade mortgage was in "First position" and the Countrywide mortgage was in "Second position"; "[a] subordination of mortgage was prepared subordinating said

_____

[4] The plaintiffs' complaint in the present action avers that "Waldstein provided AmRhein with an affidavit," but omits the critical fact that AmRhein's attorney (not Waldstein) drafted the affidavit for Waldstein's signature, and asked AmRhein to go to Waldstein's office to pick up a signed copy.  As we discuss infra, the trial judge's findings in Baystate I present a more comprehensive account of the plaintiffs' scheme to eliminate the junior liens on the property.

First Trade . . . mortgage to the . . . Countrywide mortgages[5] but was never executed and does not exist to [Waldstein's] knowledge"; and a purchaser of the First Trade promissory note could rely on the representations contained in the affidavit.

On July 8, 2011, AmRhein directed Martinez (as trustee of the trust) to purchase the First Trade promissory note and an assignment of the First Trade mortgage. The plaintiffs alleged in their complaint that soon after the purchase of the First Trade note and mortgage, the plaintiffs obtained knowledge of Baystate I and assumed First Trade's defense. They further alleged that they reasonably relied upon the affidavit "certifying that the First Trade Mortgage was a first priority or senior mortgage" and that "if Waldstein had disclosed [Baystate I] that was then pending by US Bank against First Trade, [p]laintiffs would not have acquired the First Trade Promissory Note and the First Trade Mortgage."

b. Baystate I. Nearly eleven months before the plaintiffs filed their complaint in the present action, U.S. Bank, in an equitable subrogation action, sought a declaration that its mortgage interest should be in the first priority position, which would relegate the First Trade mortgage owned by the plaintiffs to the second priority position. In Baystate I, the

---

[5] The affidavit references two Countrywide mortgages, both of which were subordinate to the First Trade mortgage at the time Baystate I was commenced.

trial judge, proceeding without a jury, made extensive factual findings and granted U.S. Bank's request to hold the first priority position on the property. The trial judge found that AmRhein was aware, or should have been aware, of the claim of Countrywide (the predecessor-in-interest to U.S. Bank) to the first priority position. He further found that AmRhein planned with Venuto to take advantage of Waldstein's mistake in order to extinguish the junior mortgages, and thus the trust was not a bona fide purchaser such that it should be shielded from the doctrine of equitable subrogation. A panel of this court affirmed the judgment in an unpublished decision issued pursuant to our rule 1:28. See U.S. Bank, N.A. v. Martinez, 86 Mass. App. Ct. 1111 (2014).

Several findings of the trial judge in Baystate I are particularly critical to the present case, including the following:

> "AmRhein was aware, or should have been aware, of the claim of Countrywide to the first lien position. Venuto came to AmRhein, his close friend, with the plan for him (AmRhein) to buy the First Trade Mortgage, for AmRhein to foreclose on Venuto's house, and thereby wipe out the junior mortgages. AmRhein was aware that it was only through Waldstein's mistake or negligence that First Trade was in the superior position and he knew, or should have known, that Countrywide or its assignee would pursue its claim to first priority. I do not find credible AmRhein's testimony that he was not aware of this lawsuit."

The trial judge further found that AmRhein was aware from the first meeting with Venuto that there was a dispute between the

banks over which had the priority lien position, and he (AmRhein) was aware that there should have been a subordination by First Trade to the Countrywide mortgage, which had not occurred. The trial judge found that AmRhein knew of Baystate I, and that AmRhein, with the help of his attorney, formed the trust to acquire the First Trade mortgage. The trial judge determined that prior to the purchase of the First Trade mortgage, AmRhein's attorney had drafted the affidavit for Waldstein's signature (see note 4, supra), which contained statements regarding the first and second lien positions that "were known already and were easily ascertainable." Finally, the trial judge found that AmRhein, through the trust, paid $204,000 for the assignment of the mortgage and the loan, which had a balance of $1.4 million and an apparent first lien priority.

2. Standard of review. "A defendant's rule 12(c) motion is 'actually a motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted.'" Jarosz, 436 Mass. at 529, quoting from Smith & Zobel, Rules Practice § 12.16 (1974). As we would with a motion to dismiss, we review the judge's ruling de novo. Ridgeley Mgmt. Corp. v. Planning Bd. of Gosnold, 82 Mass. App. Ct. 793, 797 (2012). "In deciding a rule 12(c) motion, all facts pleaded by the nonmoving party must be accepted as true." Jarosz, supra

at 529-530, citing Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass. 904, 905 (1984). However, a judge is "not required to accept as true those 'facts which the court could take judicial notice are not true.' Hargis Canneries, Inc. v. United States, 60 F. Supp. 729, 729 (D.C. Ark. 1945)." Jarosz v. Palmer, 49 Mass. App. Ct. 834, 836 (2000), S.C., 436 Mass. 526 (2002). See Jarosz, supra at 530 ("[W]e see no reason that a judge may not also consider on a rule 12[c] motion those facts of which judicial notice can be taken. Further, a judge may take judicial notice of the court's records in a related action").

3. Issue preclusion. "The doctrine of issue preclusion provides that when an issue has been 'actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim.'" Id. at 530-531, quoting from Cousineau v. Laramee, 388 Mass. 859, 863 n.4 (1983). Here, the plaintiffs challenge the motion judge's conclusion that the issue of reasonable reliance was actually litigated in Baystate I, was identical to issues adjudicated in Baystate I, and was essential to the court's decision in Baystate I.[6]

_____

[6] The plaintiffs contend that because the issue of reasonable reliance was not litigated in Baystate I, the issues

a.  Actually litigated.  In determining whether an issue was actually litigated for preclusion purposes, courts ask whether the issue was "subject to an adversary presentation and consequent judgment that was not a product of the parties' consent."  Jarosz, supra at 531 (quotation marks and citation omitted).  See Restatement (Second) of Judgments § 27 comment d (1982).  The plaintiffs argue that the issue of reasonable reliance was not actually litigated because Baystate I centered on the mortgage priority dispute, whereas the present action addresses AmRhein's reliance on Waldstein's representations.

We first examine the nature of the misrepresentation alleged in the plaintiffs' complaint.  As found by the trial judge in Baystate I, the affidavit, upon which the plaintiffs purportedly relied, contained averments that were all true, and all known to AmRhein.  That notwithstanding, the plaintiffs still allege that "AmRhein was unaware of [Baystate I] when he directed Martinez to purchase an assignment of the First Trade Mortgage."  Therefore, the plaintiffs contend, the omission in the affidavit of any reference to the existence of the pending U.S. Bank claim constituted the actionable misrepresentation.  Had the affidavit "disclosed the existence of" Baystate I, the

_____

presented here are neither identical, nor essential, to the court's decision in Baystate I.  Thus, all of the plaintiffs' arguments are effectively contingent on whether the issue of reasonable reliance was actually litigated in Baystate I.

plaintiffs allege, they would not have purchased the First Trade mortgage.  This claim is belied by AmRhein's knowledge and state of mind, which was fully litigated in Baystate I.

There is no dispute that the parties in Baystate I fully litigated the issue whether the trust was a bona fide purchaser such that it should be shielded from the doctrine of equitable subrogation.  An essential issue inherent to this consideration was the innocence of the trust.  The trial judge in Baystate I determined that the trust was not a bona fide purchaser for value, but rather was an entity formed as part of the ploy to take advantage of Waldstein's mistake (in failing to obtain a subordination of the First Trade mortgage) and wipe out the junior Countrywide liens.  As found by the trial judge, AmRhein already knew, or should have known, of Countrywide's claim to the first lien position, and that Countrywide or its assignee would pursue its claim to first priority.  The statements in the affidavit regarding the first and second lien positions "were known already and were easily ascertainable," and AmRhein knew that First Trade was in the superior position solely through Waldstein's mistake or negligence.  Furthermore, AmRhein spoke to Waldstein about the contents of the affidavit and the substance of the First Trade purchase.  Thus, Baystate I established that AmRhein knew of the existence of the U.S. Bank claim and that the purported misrepresentation (the omission

from the affidavit of the "existence" of the U.S. Bank claim) had been litigated and resolved on the merits.  In light of this determination in Baystate I, the plaintiffs' claim of reasonable reliance in the present case fails as a matter of law.  We thus agree with the motion judge's conclusion that the "plaintiffs' claim that they relied upon Waldstein's representations was fully litigated (and rejected) in [Baystate I]."  Accordingly, the plaintiffs are precluded from relitigating this issue.

The plaintiffs insist, however, that even if they had actual knowledge of Baystate I, the inquiry does not end there. They advance two theories to try to salvage their argument that their reliance upon the affidavit was nonetheless reasonable. The claims are without merit.

First, they allege that their reliance was reasonable because Waldstein, as an attorney, had a duty to advise them of the U.S. Bank claim of priority in Baystate I.  The affidavit merely states, in relevant part, that the First Trade mortgage was in first position, the Countrywide mortgage was in second position, and a subordination of the First Trade mortgage to the Countrywide mortgage was prepared but "never executed and does not exist to [Waldstein's] knowledge."  As determined in Baystate I, AmRhein already knew all of this information. Waldstein's representations, drafted by AmRhein's attorney no less, do not aver that the mortgage priorities would remain in

the same position.  Contrast <u>Kirkland Constr. Co</u>. v. <u>James</u>, 39 Mass. App. Ct. 559, 562-564 (1995) (reversing allowance of rule 12[b][6] motion to dismiss where nonclient plaintiff alleged that defendant-lawyers induced it into contract, intended that plaintiff would rely on their allegedly false written representations, and plaintiff reasonably so relied). Furthermore, the trial judge in <u>Baystate I</u> discredited AmRhein's contention that he and Waldstein did not discuss the contents of the affidavit or the substance of the proposed purchase of the First Trade mortgage.  The plaintiffs' claim of reliance also ignores the finding that their actions were part and parcel of the "plan" to eliminate the junior mortgages.  Thus, their argument is unpersuasive.

Second, the plaintiffs allege that even if their reliance on the affidavit was tantamount to wilful blindness, their misrepresentation claim should survive the rule 12(c) motion. At oral argument before this panel, the plaintiffs cited <u>McEvoy Travel Bureau, Inc</u>. v. <u>Norton Co</u>., 408 Mass. 704 (1990), to support this contention.

<u>McEvoy Travel Bureau, Inc</u>., involved a distinctive set of facts and does not stand for the proposition proffered by the plaintiffs.[7]  There, the Supreme Judicial Court held that in view

---

[7] Nearly seventeen years after its decision in <u>McEvoy Travel Bureau, Inc</u>., the Supreme Judicial Court characterized it as

of the thirty-year relationship between the parties and the commitments already undertaken by the plaintiff at the defendant's request (which included moving its office to the defendant's building at considerable expense, hiring necessary extra personnel, and purchasing computer systems and equipment), the plaintiff could have reasonably relied on the defendant's representations that it would not invoke a sixty-day termination clause that it described as "inoperative" and "meaningless." Id. at 708. Thus, McEvoy Travel Bureau, Inc., does not support the contention that reasonable reliance may be predicated on wilfully blind acceptance of a third party's representation, which is known by the relying party to be false. Indeed, Massachusetts law is to the contrary. See Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 468 (2003), citing Restatement (Second) of Torts § 541 (1977) ("The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him"). Moreover, the present case does not fall into the category of cases where parties are trying to conceal or lull other parties into ignoring obvious red flags.

---

"the only recent case where this court has upheld a misrepresentation claim in the face of a written contract." Masingill v. EMC Corp., 449 Mass. 532, 541 (2007). The detailed facts of McEvoy Travel Bureau, Inc., supra at 706-709, are summarized in Masingill, supra at 541-542, and we need not repeat them here.

Ibid. The alleged misrepresentation in the present case consisted of the failure of Waldstein to disclose, in the affidavit prepared by AmRhein's attorney, the existence of a priority dispute that was already known to AmRhein. This alleged "omission" could not have concealed the existence of facts already known to AmRhein.

b. Identical issues. The plaintiffs argue that because the issue of reasonable reliance was neither raised nor litigated by the parties in Baystate I, the issues decided there could not have been identical to the issue in the current adjudication. Because we hold, as discussed supra, that the issue of reasonable reliance was actually litigated in Baystate I, the argument is unavailing. Furthermore, "even if there is a lack of total identity between the issues involved in two adjudications, the overlap may be so substantial that preclusion is plainly appropriate." Commissioner of the Dept. of Employment & Training v. Dugan, 428 Mass. 138, 143 (1998), citing Restatement (Second) of Judgments § 27 comment c (1982). Here, the overlap is clear, as the critical issue in both cases was the plaintiffs' knowledge and awareness of the existence of the priority dispute. See id. at 142-143 (findings made in prior disciplinary adjudication regarding employee's conduct and state of mind precluded her from contesting in subsequent proceedings whether she had engaged in deliberate misconduct).

Accordingly, the issue raised in the present action was sufficiently identical to those litigated in Baystate I for purposes of issue preclusion.

c.  Essential to the judgment.  As discussed supra, the critical issue in Baystate I and the present action was whether AmRhein knew of the existence of the U.S. Bank claim.  In Baystate I, the trial judge found, inter alia, that AmRhein knew or should have known that U.S. Bank would pursue its claim to first priority and knew that First Trade's superior position was due solely to Waldstein's mistake.  We agree with the motion judge that this "finding (which obviously leads to the conclusion that the plaintiffs did not rely on Waldstein's representations) was essential to the determination [in Baystate I] that US Bank was entitled to equitable subrogation because it meant that the Trust was not an innocent purchaser of the First Trade mortgage."

4.  Conclusion.  For the reasons stated, we conclude that the motion judge properly determined that the plaintiffs' misrepresentation and G. L. c. 93A[8] claims were barred by the doctrine of issue preclusion.

Judgment affirmed.

---

[8] The plaintiffs make no attempt to distinguish the applicability of issue preclusion to their G. L. c. 93A, § 11, claim from its applicability to their misrepresentation claims. Thus, any such argument has been waived.  See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).