DITKOFF, J.
The defendant and plaintiff in counterclaim, Donna M. Aliberti, alleges that she was the sole properly designated beneficiary of three individual retirement accounts (IRAs) owned by Patrick Kenney (Kenney), her former romantic partner, and held by the plaintiff, UBS Financial Services, Inc. (UBS). She alleges that, after Kenney died, UBS distributed funds from two of the IRAs to improper claimants, while ignoring her claims. Even after the only other claimant dropped his claim to the largest IRA, UBS waited more than three months before distributing the uncontested proceeds to Aliberti. She now appeals from a judgment on the pleadings by a Superior Court judge dismissing her amended counterclaim against UBS as to all three IRAs. Concluding that a custodian holding an IRA has duties under New York law, both as a fiduciary and in contract, to a beneficiary of the account, we reverse the judgment for UBS on Aliberti's claims of breach of contract, breach of fiduciary duty, and violation of G. L. c. 93A, § 2. We otherwise affirm the judgment for UBS on Aliberti's amended counterclaim.
1. Background. The essential facts are drawn from the pleadings and the documents attached to the pleadings or incorporated by reference, see State Room, Inc. v. MA-60 State Assocs., L.L.C., 84 Mass. App. Ct. 244, 245, 248, 995 N.E.2d 807 (2013), and we assume the allegations pleaded by Aliberti, as the party opposing judgment on the pleadings, are true. See Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 723, 985 N.E.2d 388 (2013).
Prior to his death, Kenney owned three IRAs held by UBS: (1) one with an approximate value of $31,000; (2) one with an approximate value of $18,000; and (3) one with an approximate value of $276,000. The IRAs were maintained pursuant to a "UBS Client Relationship Agreement" (client agreement), a contract between UBS and Kenney designating UBS as custodian of the IRAs without discretionary authority.
*339 Under the client agreement, UBS obligated itself to transfer any funds to the beneficiary or beneficiaries previously named by Kenney upon Kenney's death.[1] When he opened them in 2008, Kenney named Aliberti the sole beneficiary for all three IRAs. Margaret Kenney,[2] a financial adviser at UBS and the former sister-in-law of Kenney, managed Kenney's IRAs.
In November, 2013, after Kenney expressed a desire to name additional beneficiaries, UBS sent Kenney beneficiary designation update forms (update forms) for the IRAs. Kenney returned update forms for the two smaller IRAs, but not for the largest. The update forms named Craig Gillespie as the primary beneficiary with Aliberti, Aliberti's son, and Kenney's niece as contingent beneficiaries. Inconsistent with these designations, the forms also dictated that all four beneficiaries were each to receive a twenty-five per cent share of the proceeds. (The update form instructions required that the primary beneficiary shares total one hundred per cent and that the contingent beneficiary shares total one hundred per cent.) UBS requested that Kenney clarify whether all four individuals were intended as primary beneficiaries and sent him another set of update forms to fill out correctly. UBS never received properly completed update forms for the two smaller IRAs. Kenney unexpectedly died on December 2, 2013.
On December 17, 2013, Aliberti contacted Margaret Kenney concerning the IRAs and requested that all funds be distributed to her as the sole beneficiary. Instead, Margaret Kenney responded with a series of text messages, including, "How big of a whore are you," "You are the most worst piece of filth I have ever encountered," and, "Are you so eager to grab the money. Did you even notice his death certificate is wrong? Oh no you were too busy ransacking."
On December 23, 2013, UBS received a letter from Gillespie's attorney stating that Gillespie was an intended beneficiary of the largest IRA and that he intended to take legal action to determine the matter. The letter also advised UBS not to make any distribution from that IRA pending resolution of the dispute. Meanwhile, on January 9, 2014, Aliberti complained to UBS about the text messages she received from Margaret Kenney. UBS responded on February 4, 2014, to inform Aliberti her concerns were being reviewed and UBS would follow up with her. When no update came, Aliberti complained again on February 24, 2014, and was assured by UBS an update would be forthcoming. Although Margaret Kenney was removed from the management of the IRAs, Aliberti received no further communication or information from UBS concerning her complaints or the IRAs.
In March and April of 2014, UBS distributed the proceeds from the two smaller IRAs equally among the four beneficiaries named on the incorrectly completed update forms (including Aliberti). Beyond that, UBS continued to ignore Aliberti's claims to all three IRAs and, in particular, provided no information on the status of the largest IRA where she remained the sole designated beneficiary.
On May 2, 2014, Aliberti's attorney sent UBS a letter requesting documents related to the disposition of the three IRAs. UBS did not respond at first and produced the requested materials only after a subpoena *340 was issued.[3] Further communications from Aliberti's attorney and Kenney's estate went unheeded by UBS for over one year, until UBS responded on June 15, 2015, to a demand letter from Aliberti's attorney outlining claims against UBS under G. L. c. 93A.
UBS eventually filed suit in the Superior Court on August 4, 2015, to determine the beneficiaries of the largest IRA by interpleading Gillespie and Aliberti. Gillespie and Aliberti filed answers and asserted counterclaims against UBS. Aliberti also asserted a cross claim against Gillespie. The three-party dispute continued until March 10, 2016, when all claims brought by Gillespie were dismissed with prejudice by agreement of the parties. No competing claims remained on the largest IRA, yet UBS did not distribute the funds to Aliberti until more than three months later, on July 1, 2016.[4]
Aliberti filed an amended counterclaim against UBS on July 21, 2016. The amended counterclaim alleges multiple counts of breach of contract (counts one, four, and seven), breach of fiduciary duty (counts two, five, and eight), intentional infliction of emotional distress (counts three, six, and nine), and violation of G. L. c. 93A, § 2, against UBS for its conduct in connection with all three IRAs (count ten).[5] UBS filed an amended complaint on September 1, 2016, arguing the distribution mooted Aliberti's claims on the largest IRA and alleging abuse of process and malicious prosecution, based both on Aliberti's initial and amended counterclaim. Then, on October 25, 2016, UBS moved for judgment on the pleadings on Aliberti's amended counterclaim, which was duly opposed by Aliberti. A Superior Court judge granted judgment on the pleadings for UBS on all counts of the amended counterclaim on June 26, 2017, and Aliberti filed a notice of appeal.[6]
2. Standard of review. A motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), "is 'actually a motion to dismiss ... [that] argues that the complaint fails to state a claim upon which relief can be granted.' " Martinez v. Waldstein, 89 Mass. App. Ct. 341, 345, 49 N.E.3d 245 (2016), quoting Jarosz v. Palmer, 436 Mass. 526, 529, 766 N.E.2d 482 (2002). "We review de novo the judge's order allowing a motion for judgment on the pleadings under rule 12 (c)." Wheatley v. Massachusetts Insurers Insolvency Fund, 456 Mass. 594, 600, 925 N.E.2d 9 (2010). We accept as true the facts from the pleadings and otherwise incorporated by the pleadings, see Merriam, 464 Mass. at 723, 985 N.E.2d 388, and we "draw every reasonable inference *341 in favor of" the nonmoving party. Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676, 940 N.E.2d 413 (2011).
3. Breach of contract. Contrary to UBS's argument, the client agreement forms the basis of all counts of breach of contract alleged in Aliberti's amended counterclaim. The client agreement was attached to UBS's original complaint, is referenced in the pleadings and incorporated in the record, and may be considered in deciding whether Aliberti's amended counterclaim warranted dismissal. See A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transp. Auth., 479 Mass. 419, 421, 95 N.E.3d 547 (2018), quoting Schaer v. Brandeis Univ., 432 Mass. 474, 477, 735 N.E.2d 373 (2000) (considering facts from "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" with facts alleged in pleadings on motion to dismiss).
It is also reasonable to infer the contractual relationship alleged in Aliberti's pleadings refers to that very client agreement. See Fraelick v. PerkettPR, Inc., 83 Mass. App. Ct. 698, 702, 989 N.E.2d 517 (2013) (drawing "every reasonable inference in [nonmovant's] favor" and accepting "the sum and substance of the factual allegations contained in the [pleadings]"). To conclude otherwise by discounting the client agreement that is within the record and essential to the case ignores the elephant in the room. That UBS now implies it does not exist strains credulity, especially given that UBS attached the client agreement to its own complaint in the first place.[7] See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 700-701 & n.3, 989 N.E.2d 517 (considering contract included in record by moving party and relied upon in nonmoving party's pleadings). Moreover, Aliberti specifically refers to the obligations owed by UBS under the client agreement as the basis of her amended counterclaim. See Vranos v. Skinner, 77 Mass. App. Ct. 280, 282 n.3, 930 N.E.2d 156 (2010) (judge properly considered documents that "were cited in the complaint, were central to the plaintiff's claims, and were of undisputed authenticity"). Because it is in the record and the "sum and substance" of Aliberti's claims, Fraelick, supra, at 702, 989 N.E.2d 517, we consider the client agreement in determining whether the pleadings state a claim upon which relief may be granted.
Pursuant to the client agreement, any dispute arising thereunder is governed by New York law, which we apply accordingly in reviewing the sufficiency of the pleadings. See Realty Fin. Holdings, LLC v. KS Shiraz Manager, LLC, 86 Mass. App. Ct. 242, 246-247, 18 N.E.3d 350 (2014) ("Massachusetts will give effect to a choice of law provision in a contract dispute, if to do so is fair and reasonable"). Breach of contract in New York (as in Massachusetts) requires (1) the existence of a valid contract; (2) the breach of that contract; and (3) resultant damages. Second Source Funding, LLC v. Yellowstone Capital, LLC, 144 A.D.3d 445, 445-446, 40 N.Y.S.3d 410 (N.Y.A.D. 2016).[8] With the existence of a contract adequately alleged, Aliberti also alleged the additional elements as required.
Aliberti was a designated beneficiary, and the client agreement obligated UBS to distribute all IRA funds to the designated beneficiaries upon Kenney's death. Kenney died, and as pleaded, the funds were not timely distributed. On the *342 counts of the amended counterclaim regarding the two smaller IRAs (counts one and four), Aliberti alleges UBS never received valid update forms to warrant its failure to distribute the entirety of the proceeds in those IRAs to her, and she thereby continues to suffer losses.
For the largest IRA, where UBS never received anything from Kenney naming anyone other than Aliberti as the designated beneficiary, Aliberti alleges UBS had no lawful excuse or justification to delay distributing the funds. Considering the time value of money and the fact that no investment decisions were made regarding the largest IRA for over two and one-half years, the facts alleged in the pleadings support the inference that Aliberti likely was damaged from the delay in distributing those funds. In any event, in New York "[n]ominal damages are always available in breach of contract action[s]," Schleifer v. Yellen, 158 A.D.3d 512, 513, 71 N.Y.S.3d 420 (N.Y.A.D. 2018), quoting Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 95, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993), including for the unreasonable delay in disbursement and the failure to provide information on the accounts. See Schleifer, supra (affirming denial of motion to dismiss contract claims based on breaching party's failure to make payments on time and disclose required financial statements).
Furthermore, Aliberti was an intended beneficiary of the client agreement. See Commissioner of the Dep't of Social Servs. of N.Y. v. New York-Presbyterian Hosp., 164 A.D.3d 93, 99-100, 82 N.Y.S.3d 390 (1st Dept. 2018) ("[A]n agreement under which a benefit is to be provided directly to a third party generally establishes an intended third-party beneficiary status"). Aliberti could properly bring these claims against UBS for breaching its contractual obligations to her as an intended third-party beneficiary. See Vestal v. Pontillo, 158 A.D.3d 1036, 1039 & n.1, 72 N.Y.S.3d 610 (N.Y.A.D. 2018) ("Plaintiff was the intended beneficiary of the [life insurance] policy from the moment when decedent applied for the policy," thus providing her with standing "as a third-party beneficiary with regard to her claims sounding in contract"). Accord Tokhtaman v. Human Care, LLC, 149 A.D.3d 476, 477, 52 N.Y.S.3d 89 (N.Y.A.D. 2017) ("Defendants are not entitled to dismissal of the breach of contract claim. Plaintiff has standing to sue as a third-party beneficiary of the alleged contracts requiring defendants to pay plaintiff"). Accordingly, Aliberti sufficiently pleaded the remaining elements of breach and resulting damages on the counts alleging breach of contract.
4. Breach of fiduciary duty. To state a claim for breach of fiduciary duty, a plaintiff must "allege that (1) [the breaching party] owed [her] a fiduciary duty, (2) ... [the breaching party] committed misconduct, and (3) [the plaintiff] suffered damages caused by that misconduct." Burry v. Madison Park Owner LLC, 84 A.D.3d 699, 700, 924 N.Y.S.2d 77 (N.Y.A.D. 2011). Accord NRT New York, LLC v. Morin, 147 A.D.3d 589, 589, 48 N.Y.S.3d 56 (N.Y.A.D. 2017). In both New York and Massachusetts, "brokers for nondiscretionary accounts do not owe clients a fiduciary duty." Celle v. Barclays Bank P.L.C., 48 A.D.3d 301, 302, 851 N.Y.S.2d 500 (N.Y.A.D. 2008).[9] Kenney's accounts were nondiscretionary and thereby imposed no fiduciary duty on UBS with respect to him.
*343 See Barrett v. Grenda, 154 A.D.3d 1275, 1278, 62 N.Y.S.3d 673 (N.Y.A.D. 2017) (financial institution holding self-directed IRA "owed no fiduciary duty to plaintiff" owning the account). That is not so, however, for Aliberti as a beneficiary.
Rather, "[a] fiduciary relationship 'exists between two persons when one of them is under a duty to act for ... the benefit of another upon matters within the scope of the relation.' " EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 19, 799 N.Y.S.2d 170, 832 N.E.2d 26 (2005), quoting Restatement (Second) of Torts § 874 comment a. The accounts at issue were IRAs, which by definition are "trust[s] created or organized in the United States for the exclusive benefit of an individual or his beneficiaries." 26 U.S.C. § 408(a) (2012).[10] Although 26 U.S.C. § 408 does not create any private right of action for Aliberti here, it establishes UBS as a trustee holding the IRAs for the exclusive benefit of Aliberti following Kenney's death and in accordance with certain contractual obligations.[11] A trustee is a fiduciary under New York law, see N.Y. Estates, Powers and Trusts Law § 1-2.7, which at the minimum suggests a common-law fiduciary duty owed to Aliberti. See EBC I, Inc., supra at 21, 799 N.Y.S.2d 170, 832 N.E.2d 26.
Here, the essential elements of a fiduciary relationship -- reliance, de facto control, and dominance, see People v. Coventry First LLC, 13 N.Y.3d 108, 115, 886 N.Y.S.2d 671, 915 N.E.2d 616 (2009), are most telling. UBS exercised complete control over the IRAs following Kenney's death, and Aliberti -- a named beneficiary -- was entirely reliant on UBS for access to the funds and any information about them. This alone is sufficient to establish a fiduciary relationship. See Shurka v. Shurka, 100 A.D.3d 566, 566, 955 N.Y.S.2d 12 (N.Y.A.D. 2012) ("appellant has administered and controlled the payment of the promissory notes on which defendant is a payee, thus creating a fiduciary relationship between defendant and appellant").
As a fiduciary, UBS was obligated to administer the IRAs for the exclusive benefit of Aliberti (assuming the truth of Aliberti's allegation that she was the only proper beneficiary) while acting fairly and in her best interests. See EBC I, Inc., 5 N.Y.3d at 19-20, 799 N.Y.S.2d 170, 832 N.E.2d 26. Accord McDermott v. Regan, 82 N.Y.2d 354, 361, 604 N.Y.S.2d 890, 624 N.E.2d 985 (1993) ("fiduciary role as trustee" requires acting in beneficiaries' "best interests in exercising its limited oversight of the funds");
*344 Matter of Lawrence, 24 N.Y.3d 320, 344, 998 N.Y.S.2d 698, 23 N.E.3d 965 (2014) (breach occurs when any fiduciary "acts in his own interests rather than in the best interests of the [beneficiary]").
More specifically, UBS was required to timely distribute the IRA proceeds to Aliberti upon Kenney's death and to keep her otherwise informed of their status. See Glassman v. Weinberg, 154 A.D.3d 407, 409, 62 N.Y.S.3d 54 (N.Y.A.D. 2017) (trial court properly sustained "counterclaim's allegation that [plaintiff's] efforts to delay turnover of the escrowed funds were contrary to his fiduciary duty"). See also Shurka, 100 A.D.3d at 566-567, 955 N.Y.S.2d 12 ("The court also properly ordered [fiduciary controlling payments] to produce documents related to [company holding payment funds], and to pay to defendant her proportionate past and future payments on the promissory notes, which it appears [fiduciary] has withheld").
Accepting the allegations in Aliberti's amended counterclaim as true, see Curtis, 458 Mass. at 676, 940 N.E.2d 413, UBS intentionally did not distribute the proceeds in a timely manner. At the very least, UBS had a basic "duty to perform its ministerial functions with due care," see Cece & Co. v. U.S. Bank Nat'l Ass'n, 153 A.D.3d 275, 278-280, 60 N.Y.S.3d 5 (N.Y.A.D. 2017) (commercial trustee owed duty of care to securities' owners even in absence of fiduciary relationship), which it likewise failed to do by unreasonably refusing to take reasonably prompt measures to adjudicate the dispute concerning the proper beneficiary of the largest IRA and then unreasonably delaying distribution even once the dispute was resolved.
The claims that UBS breached its fiduciary duty to a beneficiary of the IRAs are neither conclusory, contrast Dineen v. Wilkens, 155 A.D.3d 607, 609, 64 N.Y.S.3d 56 (N.Y.A.D. 2017), nor are they necessarily duplicative in substance or in damages to those of breach of contract. Compare Vandashield Ltd. v. Isaacson, 146 A.D.3d 552, 555, 46 N.Y.S.3d 18 (N.Y.A.D. 2017), quoting Don Buchwald & Assocs. v. Rich, 281 A.D.2d 329, 330, 723 N.Y.S.2d 8 (N.Y.A.D. 2001) (punitive damages allowed for breach of fiduciary duty where claimant alleged "intentional or deliberate wrongdoing"), with International Plaza Assocs., L.P. v. Lacher, 63 A.D.3d 527, 528, 881 N.Y.S.2d 414 (N.Y.A.D. 2009), quoting Fulton v. Allstate Ins. Co., 14 A.D.3d 380, 381, 788 N.Y.S.2d 349 (N.Y.A.D. 2005) ("Punitive damages are not recoverable for an ordinary breach of contract"). Aliberti, in short, sufficiently pleaded claims in the counts of her amended counterclaim alleging breach of fiduciary duty.
5. Intentional infliction of emotional distress. The sole basis for Aliberti's allegations of intentional infliction of emotional distress is a conclusory claim stating she suffered "extreme emotional distress." That is not enough to survive a motion for judgment on the pleadings for the counts alleging intentional infliction of emotional distress. See Polay v. McMahon, 468 Mass. 379, 388, 10 N.E.3d 1122 (2014) (affirming dismissal of claim containing "only the conclusory statement that 'the emotional distress suffered by the [p]laintiff was severe and of such a nature that no reasonable person could be expected to endure it' ").
6. General Laws c. 93A, § 2, claim. Section 2 of G. L. c. 93A prohibits unfair and deceptive acts or practices in the conduct of any trade or commerce. There is no rule "that G. L. c. 93A claims invariably are prohibited against trustees or other fiduciaries," only "that violations of c. 93A must take place in the conduct of 'trade or commerce.' "[12]
*345 Quinton v. Gavin, 64 Mass. App. Ct. 792, 797, 835 N.E.2d 1124 (2005), quoting G. L. c. 93A, § 2 (a ). Consequently, UBS "may not rely on [its] status as trustee to shield [itself] from liability under G. L. c. 93A." Gavin, supra at 799, 835 N.E.2d 1124.
Like in Quinton, UBS became a trustee here by providing financial services "to members of the public in the ordinary course of business," 64 Mass. App. Ct. at 799, 835 N.E.2d 1124, and thereby engaged in commercial practices "in connection with professional services ... sold in the marketplace." Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 851, 81 N.E.3d 782 (2017). One of its customers was Kenney, who entered into a commercial transaction with UBS under the client agreement. See Quinton, supra at 798-799, 835 N.E.2d 1124. This is sufficient to supply the "trade or commerce" requirement of G. L. c. 93A, § 2.[13] See Selmark Assocs., Inc. v. Ehrlich, 467 Mass. 525, 549, 5 N.E.3d 923 (2014) (requiring commercial transaction in business context for c. 93A claims); Barron v. Fidelity Magellan Fund, 57 Mass. App. Ct. 507, 513-514, 784 N.E.2d 634 (2003) (c. 93A claim by account beneficiary properly actionable against brokerage company).
The amended counterclaim also adequately alleged unfair or deceptive acts or practices on the part of UBS. "Chapter 93A does not define what constitutes an 'unfair or deceptive act or practice,' " Kattar v. Demoulas, 433 Mass. 1, 13, 739 N.E.2d 246 (2000) ; instead, "an act or practice is unfair if it falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to consumers." Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 316, 94 N.E.3d 786 (2018), quoting Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016).
In Barron, the plaintiff was the beneficiary of a mutual fund account, 57 Mass. App. Ct. at 508, 784 N.E.2d 634, which was wrongly surrendered and liquidated by the account custodian -- without notice to the owners or the beneficiary -- because the custodian failed to maintain adequate records. Id. at 508 n.3, 511, 784 N.E.2d 634. When the beneficiary requested his account be reinstated, the custodian refused; the beneficiary was forced to file suit, and it took years to recoup his losses. Id. at 509-510, 784 N.E.2d 634. We concluded that the custodian's conduct in that case was not only actionable as unfair or deceptive under G. L. c. 93A, § 2, see Barron, supra at 514, 516 n.20, 784 N.E.2d 634, but also that the claims for attorney's fees and costs could proceed. Id. at 520, 784 N.E.2d 634.[14] Based on the pleadings here, UBS likewise (1) denied Aliberti the funds to which she was entitled; (2) for multiple years; (3) without good reason; (4)
*346 until she was forced to take legal action and incur unnecessary costs and fees. Applying Barron to the case before us, Aliberti has a similarly actionable claim under G. L. c. 93A, § 2.
Moreover, there are "additional facts ... exacerbating the unfairness," Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 606, 864 N.E.2d 518 (2007), in this case. UBS actively ignored Aliberti for months despite repeated complaints and requests for information, see id. (defendant "could rarely be reached and did not return [plaintiff's] frequent telephone calls and letters requesting resolution of the delay problems with any regularity, often took weeks to respond to [plaintiff's] inquiries, and sometimes stopped communicating at all, with no adequate or even plausible explanations for their lack of responsiveness"), and UBS later filed an amended complaint against Aliberti alleging abuse of process and malicious prosecution in response to her assertion of her rights.
Furthermore, we are required at this stage to assume this conduct occurred in breach of a fiduciary duty as well as contractual obligations to Aliberti. See State Room, Inc., 84 Mass. App. Ct. at 248, 995 N.E.2d 807. That is sufficient to plead unfair or deceptive acts under G. L. c. 93A, § 2. See Brewster Wallcovering Co., 68 Mass. App. Ct. at 605-606, 864 N.E.2d 518 ("finding that [party] breached the covenant of good faith and fair dealing ... would provide an independently sufficient basis for the finding that it violated c. 93A"). Accord Baker, 91 Mass. App. Ct. at 850-851, 81 N.E.3d 782. In Baker, for example, minority members of a limited liability company alleged attorneys representing the company violated their fiduciary duty by orchestrating a freeze-out on behalf of majority members. Id. at 837, 81 N.E.3d 782. We reversed the dismissal of the plaintiffs' G. L. c. 93A claims because the specter of fiduciary breach was sufficient to show the defendants "engaged in unfair or deceptive acts or practices." Baker, supra at 851, 81 N.E.3d 782. See McCarthy v. Landry, 42 Mass. App. Ct. 488, 491, 678 N.E.2d 172 (1997) (because "complaint sets forth facts sufficient to allege such a [fiduciary] duty, we further conclude that their G. L. c. 93A claim also was improperly dismissed and may be reexamined on remand"). For the same reason and those previously discussed,[15] the count under G. L. c. 93A, § 2, was sufficient to withstand judgment on the pleadings.[16]
7. Conclusion. So much of the judgment as dismisses the counts of Aliberti's amended counterclaim against UBS for breach of contract, breach of fiduciary duty, and unfair or deceptive trade practices in violation of G. L. c. 93A, § 2, is *347 reversed. The judgment is otherwise affirmed.
So ordered.

Specifically, the client agreement stated, "At your death, your IRA will be transferred to the beneficiary or beneficiaries you have designated...."

We refer hereafter to Margaret Kenney by her full name to avoid confusion.

The record does not reveal how this subpoena was issued.

The funds from the largest IRA were distributed in accordance with an agreement between UBS and Aliberti releasing UBS from liability specific to those funds alone. Aliberti expressly reserved all other claims, including those depending upon or "related to the conduct of UBS and/or its employees in the handling of [the largest IRA], as well as all other claims in the proposed Amended Counterclaim."

Aliberti also sought to amend her pleadings to bring claims against Margaret Kenney, but the judge denied this request because Margaret Kenney was not a party to the action. Aliberti raises no challenge to this on appeal.

Shortly thereafter, UBS voluntarily dismissed its claims against Aliberti without prejudice, and judgment entered accordingly. Although Aliberti's notice of appeal should have been filed after the final judgment, we have the discretion to hear an appeal where a premature notice of appeal was cured by a final judgment. See ZVI Constr. Co. v. Levy, 90 Mass. App. Ct. 412, 418, 60 N.E.3d 368 (2016).

Indeed, UBS properly conceded the client agreement's existence and validity at oral argument.

Accord Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690, 46 N.E.3d 24 (2016).

Accord Patsos v. First Albany Corp., 433 Mass. 323, 333, 741 N.E.2d 841 (2001) (generally, broker does not owe fiduciary duty to customer "[w]here the account is 'non-discretionary,' meaning that the customer makes the investment decisions and the stockbroker merely receives and executes a customer's orders").

See Ciampa v. Bank of Am., 88 Mass. App. Ct. 28, 31 n.9, 35 N.E.3d 765 (2015) ("During the life of the settlor, an IRA is essentially a revocable, inter vivos trust" that becomes irrevocable following death).

A qualifying IRA requires a written instrument providing that, inter alia, funds held in a fiduciary capacity awaiting distribution may not be held "undistributed any longer than is reasonable for the proper management of the account." 26 C.F.R. § 1.408-2(e)(5)(iv). See Federal Administrative Practice § 10531[2] (West Supp. 2018) ("The IRA agreement must provide that if the IRA owner dies before the entire interest in the IRA has been distributed, the remaining interest must be distributed to the beneficiary or beneficiaries in accordance with certain rules"). Although the regulations recognize limits to the extent of fiduciary responsibility for trustees of nondiscretionary accounts like UBS, that requires "clear and convincing proof that such requirements are not germane, under all the facts and circumstances." 26 C.F.R. § 1.408-2(e)(6)(i)(A). See Federal Administrative Practice § 10527 ("A custodial account may be established instead of a trust, in which case the custodian must meet the qualifications of a trustee. The custodial account will then be treated as a trust and the custodian as a trustee").

Chapter 93A thus precludes trustee claims involving "private disputes between parties to the same business venture," Quinton, 64 Mass. App. Ct. at 797, 835 N.E.2d 1124, which is not the case here. Compare Lattuca v. Robsham, 442 Mass. 205, 209, 812 N.E.2d 877 (2004) (barring c. 93A claim against cotrustee brought by business partner), with Quinton, supra at 797-799, 835 N.E.2d 1124 (affirming judgment on c. 93A claim brought by trust beneficiary and settlors against trustee providing trust arrangements as part of financial management service).

It is irrelevant that Aliberti was a third-party beneficiary of the client agreement; she has standing nonetheless under the statute. See Kattar v. Demoulas, 433 Mass. 1, 14-15, 739 N.E.2d 246 (2000) ("Parties need not be in privity for their actions to come within the reach of c. 93A").

Notably, we reached this conclusion even after the custodian had repaid the beneficiary for the actual value of the lost account funds. See Barron, 57 Mass. App. Ct. at 509, 784 N.E.2d 634.

"[T]he practice of law constitutes 'trade or commerce' for purposes of liability under c. 93A," Baker, 91 Mass. App. Ct. at 850, 81 N.E.3d 782, quoting Brown v. Gerstein, 17 Mass. App. Ct. 558, 570, 460 N.E.2d 1043 (1984), in the same manner as being trustee in the context of a financial services agreement. See Quinton, 64 Mass. App. Ct. at 799, 835 N.E.2d 1124 ("We also fail to see why, having sold his trustee services in the marketplace to consumers, [the defendant] should be treated any differently from similarly situated business professionals [including attorneys and stock brokers] who are subject to the reach of G. L. c. 93A").

UBS's request for attorney's fees on the ground that Aliberti's appeal is frivolous is, of course, denied. Contrary to UBS's assertion, it is not improper to raise "the same arguments that were raised below." Rather, the arguments that were raised in the Superior Court are the ones preserved for appeal. See Cannonball Fund, Ltd. v. Dutchess Capital Mgt., LLC, 84 Mass. App. Ct. 75, 83 n.20, 993 N.E.2d 350 (2013).